The Home Insurance Company *v.* Watts, et al.

No. 40336 January 7, 1957 91 So. 2d 722

738

*Watkins & Eager,* Jackson; *Tate Thigpen,* Picayune, for appellant.

*Morse & Morse,* Poplarville; *Gray & Montague,* Hattiesburg, for appellees.

HALL, J.

On December 1, 1953, appellant issued to Turner Watts a standard automobile policy insuring his 1951 Mercury automobile against fire and other perils to the extent of its actual cash value until December 1, 1955. This policy contained the standard clause pertaining to an appraisal in the event of damage or destruction to said automobile, which clause is as follows:

"Appraisal—If the named Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen days to agree upon such umpire, then, on the request of the Named Insured or the Company, such umpire shall be selected by a judge of a court of record in the county and state in which such ap-

praisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Named Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire.

''The company shall not be held to have waived any of its rights by any act relating to appraisal.''

In addition, the policy provides:

''Payment for Loss; Action Against Company—Payment for loss may not be required nor shall action lie against the Company unless, as a condition precedent thereto, the Named Insured shall have fully complied with all the terms of this policy nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy.''

On March 27, 1955, the automobile in question was damaged by fire to the extent that it was almost a total loss. Notice was immediately given to the Company in accordance with the terms of the policy by an attorney representing Watts. On May 16, 1955, the Company notified attorneys for the appellee that inasmuch as they had failed to agree as to the actual cash value and the amount of loss to said automobile it demanded that he select a competent and disinterested appraiser and notify appellant of his name within twenty days after receipt of said demand. The Company also advised that it had selected Mr. R. A. McKenzie of Hattiesburg, Mississippi, as its appraiser and that as soon as appellee's selection is made known to the Company the actual cash value and the amount of loss could be appraised without delay in accordance with the provisions of the policy. On May 20, 1955, the Company also notified the appellee Turner Watts in writing to the

same effect. On May 24, 1955, the attorneys for appellee submitted to the Company the name of Virgil East of Poplarville, Mississippi, as the appellee's appraiser. The Company replied on May 27, 1955, and sent to appellee's attorneys a document entitled "Automobile Appraisal Agreement" and requested that the same be executed in the presence of two witnesses and returned to the Company. On May 31, 1955, the appellee's attorneys notified the Company that the appellee would not sign any agreement but that he is willing to proceed under the provisions of the policy. On June 9, 1955, the Company acknowledged receipt of the letter of May 31 and said that it had requested Mr. McKenzie, its appraiser, to contact Mr. Virgil East, the insured's appraiser, and proceed with the appraisal. On June 10, 1955, appellee's attorneys advised the Company that they were contacting Mr. East and would let the Company know what date would be suitable for the appraisal. On June 20, 1955, appellee's attorneys wrote the Company that any day except Monday or Thursday would be agreeable to Mr. East and requested that he be advised a day or two in advance. On June 22, 1955, the attorneys for appellees wrote the Company and withdrew their agreement to arbitrate and further advised that unless an agreement of settlement was made within twenty days they intended to file suit on the claim. On September 8, 1955, the Company notified appellee's attorneys that they denied liability under the policy for the reason, first, that the insured had refused to comply with the appraisal provisions of the policy, and second, that the statements contained in the declarations as to the identity of the party holding the conditional sale contract covering the automobile were not true. On September 12, 1955, suit was brought for recovery of the value of and damage to the automobile in question in the amount of $1,400.00 and costs.

On September 28, 1955, the Company filed a demurrer to the declaration, which demurrer was overruled on

November 7, 1955, and the appellant was granted until November 14, 1955, to answer. The answer was filed on November 12, 1955. It embodied as a first defense that the loss payable clause in the policy was in favor of Parkway Motors, the company which sold the automobile to appellee, and that Parkway Motors was a necessary party. Wherefore the defendant moved the court to abate or dismiss the cause for failure to join Parkway Motors as a party to the suit. At the trial it was shown that Parkway Motors had assigned the conditional sale contract to Universal C. I. T. Credit Corporation and that said corporation had applied for and obtained and paid the premium on the policy in question with full knowledge by appellant's agent. The first defense was abandoned and is not involved in this appeal.

The second defense in the answer was, first, that the statements to the appellant failed to show Universal C. I. T. Credit Corporation as being interested in the conditional sale contract but did show Parkway Motors as being intereted therein and that the policy was issued in reliance upon the truth of said representations and that said false statements rendered the insurance contract null and void. Upon the trial on the merits this section of the second defense was abandoned and is not involved on this appeal. The second, third, fourth and fifth paragraphs of the second defense are in effect an admission of the issuance of the policy but a denial as to the value of or amount of damage to the automobile.

As a third defense the appellant pleaded the foregoing appraisal clause in the policy and charged that under said clause appellant had made written demand for an appraisal of the loss and had selected a competent and disinterested appraiser and that the appellee had likewise selected an appraiser on May 24, 1955, but that on June 22, 1955, had notified the Company that the appellee would not comply with said provision of said policy; that the appellee thereby prevented the appraisal to which the

Company was entitled and that as a result thereof he is not entitled to recover any sum under the provisions of the policy.

The fourth defense is, in effect, a repetition of the first paragraph of the second defense.

At the trial Parkway Motors entered its appearance and disclaimed any interest in the suit. The appellee dictated into the record a joinder in short on the issues raised by any affirmative matter contained in the answer.

At the trial the appellees showed by an experienced automobile man who was familiar with the car in question that it was an extra clean car and better than the average for its age and that its value was between $1150 and $1200 immediately before the fire and that after the fire it was worth about $20 as junk. Another witness for appellee testified without any personal knowledge of the car but upon a description of the same and its condition that it was worth from $900 to $1100 and that its value after the fire was from $20 to $30. Two witnesses for the appellant, who were not familiar with the automobile before the fire, testified that the average value at the time of the fire of a 1951 Mercury car was, according to one of them between $600 and $800, and according to the other, it was between $500 and $550. The second witness testified that he would have had to see the car at the time of the loss to give an accurate estimate of its value. Another witness for appellant who was in the automobile parts business testified that he made a written bid of $95 for the salvage, and a copy of this bid was introduced. The Adjuster for the appellant testified and introduced copies of the letters hereinabove mentioned. He also said that he was unable to come to any agreement as to the value of the car and that he demanded an appraisal and said that since the letter of June 22, 1955, no one has made any effort to complete an appraisal on the car. The agent who issued the policy

testified that he collected the premium thereon and that it was paid by Universal C. I. T. Credit Corporation.

A peremptory instruction was requested and denied. The jury returned a verdict for the plaintiff and assessed the value of the car at $1,000 less $95 salvage, and judgment was accordingly entered in favor of the plaintiff for $905, from which the Company appeals.

Appellant relies largely upon the case of Hartford Fire Ins. Co. v. Conner, 223 Miss. 799, 79 So. 2d 236. That case involved the interpretation of an appraisal clause identical with the one in the case at bar. It quoted from Hamilton v. Liverpool & London & Globe Ins. Co., 136 U. S. 242, 34 L. Ed. 419, 10 S. Ct. 945, which seems to be a leading case on the subject, and it also quoted from 29 Am. Jur. p. 939, Insurance, par. 1257. In the Conner case it appeared that demand for an appraisal was made and that the plaintiff ignored the demand and traded off the damaged automobile within two days thereafter. This Court held that the sale of the salvage after the fire, without the consent of the insurer, rendered an appraisement and inspection of the property impossible and was such a breach of the policy providing for the right of inspection and appraisal of the car as to avoid the liability of the insurer, and in that case this Court reversed the judgment of the lower court and rendered judgment here for the insurance company. In this case we do not have a situation where the salvage was disposed of without the consent of the insurer, nor a case where an appraisement and inspection of the property is such a breach of the policy as to wholly avoid the liability of the insurer. ▌▌ ▌ In the Conner case the Court pointed out that the plea as to demand for an appraisal of the loss was in the nature of a plea in abatement which would not require a complete denial of the plaintiff's right to recover but which would require that the action be abated or dismissed without prejudice without denying the plaintiff the right to institute another suit if and when an appraisement is had.

■■ ■ In addition to what was said in the Conner case, we call attention to 29 Am. Jur., Insurance, Section 1240, page 926, as follows:

"In accordance with general principles applicable to all contracts, it is the rule that a provision in an insurance policy that all disputes arising under the policy shall be submitted to arbitrators, or a provision similar in substance and effect, is not binding. On the other hand, the view prevailing in nearly all jurisdictions is that a stipulation not ousting the jurisdiction of the courts, but leaving the general question of liability for a loss to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is valid. Furthermore, the cases which have considered the question are agreed that no invoked provisions of the Federal or state Constitutions are violated by provisions of standard or other insurance policies for arbitration or appraisal as to the amount of the loss in case of disagreement between the parties."

Appellees rely on the case of Miss. Fire Insurance Co. v. Dixon, 133 Miss. 570, 98 So. 101. The policy in that case contained a clause providing for an appraisal in the event of disagreement as to the amount of loss. The insurance company in that case did not request an appraisal but made an outright denial of all liability and the court said "where the insured denies liability there can be no disagreement as to the amount of loss. Under such circumstances there is nothing to arbitrate. * * * This provision of the policy does not come into operation unless there is a disagreement between the parties as to the amount of the loss. ** * * In order to be entitled to the benefit of said stipulation it was the duty of appellant to put appellee in default by proposing to carry out said provisions."

■■ ■ The appellees cite and argue numerous authorities on the subject of arbitration and award and we think they are confused as to the distinction between arbitra-

tion and appraisement, and this distinction is made clear by 3 Am. Jur., Arbitration and Award, par. 3, pages 830-831, as follows: "Arbitaration is sometimes confused with other forms of procedure which have some points of similarity. For example, agreements in, or separate from, contracts, leaving to the decision of third persons questions of price, value, amounts, quantities, or qualities or not, strictly speaking, submissions to arbitration, nor are such third persons properly called arbitrators. Some of these so-called arbitrations are mere appraisements; others have some, many, or nearly all of the characteristics of arbitrations. All of them, in one or more particulars, differ from arbitrations. Appraisement, in particular, is perhaps most often confused with arbitaration. While some of the rules of law that apply to arbitration apply in the same manner to appraisement, and the terms have at times been used interchangeably, there is a plain distinction between them. In the proper sense of the term, arbitration presupposes the existence of a dispute or controversy to be tried and determined in a quasi judicial manner, whereas appraisement is an agreed method of ascertaining value or amount of damage, stipulated in advance, generally as a mere auxiliary or incident feature of a contract, with the object of preventing future disputes, rather than of settling present ones. Liability is not fixed by means of an appraisal; there is only a finding of value, price, or amount of loss or damage. The investigation of arbitrators is in the nature of a judicial inquiry and involves, ordinarily, a hearing and all that is thereby implied. Appraisers, on the other hand, where it is not otherwise provided by the agreement, are generally expected to act upon their own knowledge and investigation, without notice of hearings, are not required to hear evidence or to receive the statements of the parties, and are allowed a wide discretion as to the mode of procedure and sources of information."

To the same effect is an annotation in 44 A. L. R. 2d 850, which cites the above quoted text from American Jurisprudence.

The case of Standard Millwork & Supply Co. v. Miss. Steel & Iron Co., 205 Miss. 96, 38 So. 2d 448, is not here in point. No insurance contract was involved in that case but rather a building contract which contained an arbitration clause.

Appellees argue that the letter from appellant on September 8, 1955, hereinabove referred to was a denial of liability under the policy and that the appellant thereby waived the failure of appellees to comply with the appraisement requirement of the policy. It must be remembered however that the letter of September 8th was not written until long after the letter of June 22nd. The appellees had wholly failed and refused to do anything regarding the demand for an appraisal. In Appleman's Insurance Law and Practice, vol. 17, Sec. 9889, it is said: "A denial of liability not made until after the insured's refusal to arbitrate has also been considered not a waiver of its right." In Note No. 6 following this statement there is cited the case of Pioneer Mfg. Co. v. Phoenix Assurance Co., 106 N. C. 28, 10 S. E. 1057, which case fully supports the proposition that where a plaintiff refused to comply with an appraisement condition in a policy and the insurance company later denied liability, such denial is no waiver of the insured's obligation to submit to arbitration or appraisal. In fact, we can see no good reason why an insurance company would be held to have waived the appraisal provision in a policy by denial of liability after the insured has refused to submit the matter to appraisers as required by the policy.

Appellees also contend that by pleading all of the defenses aforesaid together and not requesting a hearing first on the plea in abatement pertaining to the appraisal feature, that the insurance company thereby

waived its defense of insured's refusal to submit to an appraisal. They cite texts on Common Law Pleading. However, by Chapter 230, Laws of 1948, Section 1475.5 of the Cumulative Supplement to the Code of 1942, it is provided: ''Pleas in circuit court are hereby abolished and every defense heretofore presentable by plea shall be made in an answer; and the answer may state as many defenses, whether consistent or not and whether heretofore made by plea in abatement or plea in bar, as in law or in fact, the defendant may have to the declaration or to any material part or parts thereof. But if matter which heretofore could constitute a plea be set up in the answer in such a manner as to be clearly distinct and readily separable and go to the entire present cause of action it may, on motion of either or any of the parties be separately heard and disposed of before the principal trial of the cause, in the discretion of the court; * * * .''

It will be noted from the foregoing that a plea in abatement may be incorporated in the answer and either party may make a motion to hear such plea and dispose of the same before the principal trial of the cause, in the discretion of the court. In this case neither party requested a separate hearing on the plea in abatement. We had occasion to deal with and interpret the above statute in the case of Christopher v. Brown, 211 Miss. 322, 51 So. 2d 579, and we pointed out that a separate trial of such an issue by one jury, followed by a trial on the merits by another jury would be expensive and time consuming and that undoubtedly it was the purpose of the legislature to prevent such undue expense, loss of time and delay and we stated that to the extent mentioned said Section 1475.5 has supplanted Sections 2713 and 2716, Code of 1942, and we may add that it also has supplanted any other sections of the Code dealing with pleas in abatement and has also supplanted the common law rules dealing with such pleas.

██ █ We conclude that the hearing of appellant's plea in abatement, under the circumstances here disclosed, without any motion for a separate hearing thereon, was proper and that the said plea should have been sustained and that the peremptory instruction requested thereon by appellant should have been granted. The Conner case, supra, says that a defense of the type here presented is in the nature of a plea in abatement. There the Court held that the failure of the plaintiff to submit to an appraisal and his further act in disposing of the property so as to make an appraisement impossible constituted a bar to the action. We do not think that the appellees in this case are completely barred from their cause of action, but we do think that before they can proceed with suit they must make an effort to comply with the appraisal clause in the policy, and therefore the judgment of the lower court will be reversed and the present cause dismissed without prejudice.

Reversed and dismissed without prejudice.

*Roberds, P. J.,* and *Lee, Holmes* and *Gillespie,* JJ., concur.

## ON SUGGESTION OF ERROR BY UNIVERSAL C. I. T. CREDIT CORPORATION

HOLMES, J.

On January 7, 1957, judgment was entered by this Court in this cause reversing the judgment of the court below and dismissing the cause without prejudice, and further adjudging that the appellant have and recover of and from the appellees all of the costs of this appeal to be taxed. A suggestion of error filed by the appellee, Turner Watts, on January 22, 1957, was overruled on January 28, 1957. On February 2, 1957, the appellee, Universal C. I. T. Credit Corporation, filed a motion to retax the costs, averring that it was merely a nominal party to the litigation and had not participated in the ap-

peal or made any appearance therein, and praying that the judgment entered be modified, amended and reformed so as to eliminate any liability or responsibility of the said Universal C. I. T. Credit Corporation for the costs of this appeal. This motion was overruled on February 25, 1957. The appellee, Universal C. I. T. Credit Corporation, then filed on February 27, 1957, what it submits as a suggestion of error to the action of the Court in overruling its said motion. In this latter suggestion of error, the Corporation raised for the first time a question of jurisdiction, contending that the Court was without jurisdiction to render a judgment against it for the costs for the reason that no summons to answer the appeal had been issued and served upon it as required by Sections 1189 and 1186 of the Mississippi Code of 1942. The Court called upon the other parties for a response to this suggestion of error and only the appellant, The Home Insurance Company, responded.

The appellant contends in its response (1) that under the authority of Inman v. Travelers Insurance Company, 154 Miss. 611, 122 So. 537, the motion to retax costs should be deemed a suggestion of error and that the suggestion of error now before the court is a second suggestion of error and cannot be entertained under Rule 14(3) of this Court providing that after a suggestion of error has been sustained or overruled by the Court no further suggestion of error shall be filed by any party; (2) that under Rule 16 of this Court no motion once disposed of or dismissed shall again be heard and that the suggestion of error now presented to the Court is an attempt to obtain a rehearing of the motion to retax costs; (3) that the Corporation entered its appearance in the appeal by filing its motion to retax the costs and waived any objection to the jurisdiction of the Court; (4) that the requirements of Sections 1189 and 1186 of the Mississippi Code of 1942 are procedural only and not jurisdictional; and (5) that since the question of

jurisdiction was not originally raised by the Corporation in its motion to retax costs, the same cannot now be raised.

■■ We are not unmindful, of course, of the rules of this Court prohibiting the filing of a second suggestion of error and providing that a motion once disposed of will not again be heard. Rule 33 of the Court, however, authorizes us to relax or dispense with the rules to prevent injustice, and we think that it is particularly appropriate to invoke this rule where a question of·jurisdiction is involved. ■■ Especially is this true since the question of jurisdiction may be raised at any stage of the proceedings, and even by the Court of its own motion. Waits v. Black Bayou Drainage District, 186 Miss. 270, 185 So. 577. Without regard to the procedure by which the question of jurisdiction is now brought to the attention of the Court, we deem it proper to consider that question and pass upon it.

Section 1189 of the Mississippi Code of 1942 provides in part as follows: ". . . . . and in all civil cases, where the appeal is not perfected during the term of the court at which the judgment or decree complained of is rendered he (the clerk) shall issue a summons to the opposite party to appear and answer the appeal in the Supreme Court."

Section 1186 of the Mississippi Code of 1942 provides in part as follows: "The summons to answer the appeal shall be served by the sheriff of the proper county on the appellee or his attorney in fact or of record, at least ten days before the time when it is returnable, and shall be sent to the Supreme Court and filed in the case, but a certified copy of the summons and service shall be sufficient. . . ."

■■ It is conceded that no summons was issued and served upon the Corporation as required by the foregoing sections. The record shows that copies of the petition for appeal, the notice to the court reporter, the

assignments of error and briefs were furnished to counsel for the Corporation, but this served only to show that the Corporation had knowledge of the appeal. It was not a substitute for the issuance and service of the summons as required by the statutes and the Corporation's knowledge of the appeal was of no avail in the absence of a legal summons, or appearance or waiver by the Corporation. McCoy v. Watson, 154 Miss. 307, 122 So. 368; Burns v. Burns, 133 Miss. 485, 97 So. 814; Hyde Construction Co. v. Elton Murphy-Walter Travis, Inc., 86 So. 2d 455. ■■ ■ The record discloses no formal waiver of the summons by the Corporation and no entry of appearance on the appeal. It is argued by the appellant that the filing of the motion to retax the costs constituted an entry of appearance and waiver of process, but that motion was filed after the entry of the judgment complained of and could not serve to give validity to the judgment if invalid for the want of proper process.

■■ ■ In brief, we are presented with the question whether the requirements of Sections 1189 and 1186 of the Code of 1942 are procedural or jurisdictional. ■■ We are of the opinion and hold that the requirements of said Code sections with respect to the issuance and service of a summons on an appellee are jurisdictional, and that compliance therewith is a prerequisite to the entry of a valid judgment against an appellee in the absence of an entry of appearance or waiver by such appellee.

Appellant cites and relies upon the case of Hartford A. & I. Co. v. Nelson, 167 Miss. 63, 145 So. 889. In that case, however, the Court was construing Section 1156 of the Code of 1942 providing that where one or more parties to a judgment appeal therefrom, summons shall issue for such as do not join in the appeal. The Court held that said Code section was procedural and jurisdictional, saying that the purpose of the statute was to prevent the splitting of appeals with the inconvenience and difficulties resulting therefrom. The afore-

said Code sections 1189 and 1186, however, make mandatory the issuance and service of a summons on the opposite party in the absence of a waiver of process or the entry of appearance. The Nelson case, supra, therefore, is not, in our opinion, applicable.

It is our conclusion that on this record the Court was without jurisdiction over the person of the Corporation to enter a judgment against it for the costs and that to that extent the judgment is invalid, and accordingly the suggestion of error to the action of the Court in overruling the motion of the appellee, Universal C. I. T. Credit Corporation, to retax the costs is sustained, and the order overruling said motion is set aside and said motion is sustained and the judgment is modified to the extent that there is eliminated therefrom any liability or responsibility of the appellee, Universal C. I. T. Credit Corporation for the costs of appeal.

Suggestion of error by Universal C. I. T. Credit Corporation sustained.