GOFF v. JACOBS.

(Division B. Jan. 30, 1933.)

[145 So. 728. No. 30397.]

Somerville & Somerville, of Cleveland, for appellant.

Shands, Elmore & Causey, of Cleveland, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The parties hereto, on March 19, 1930, entered into a written contract for the sale by appellant and the purchase by appellee of a certain sufficiently described farm in Bolivar county. As part of the purchase money appellee agreed to assume the balance due on a mortgage to the Federal Land Bank and also "to assume all 1930 taxes on place." The contract stipulated that with the exception of the two items mentioned, appellant should have and be required to convey "a good and valid unincumbered fee simple title." Appellee, the purchaser, having declined to accept a deed and to pay the purchase money due to be paid on the delivery of deed, appellant filed her bill for specific performance. Appellee answered; and, among others, he interposed the defense that appellant was not possessed of an unincumbered title to the property, not counting the Federal Land Bank loan and the taxes for 1930; but that the property was further incumbered by a drainage tax lien extending through a period which would not expire until the year 1945.

There is an agreed statement of facts in the record that the lands involved are within the Labon Bayou drainage district, which was organized in the year 1920 under chapter 195, Laws 1912, and chapter 269, Laws

1914, and amendments thereto. That in the year 1920 bonds of the said district were issued in the sum of two hundred and forty-six thousand dollars maturing annually over a period of twenty-five years from the said year 1920, and that in 1922 there was a second issue of bonds in the sum of fifty thousand dollars, maturing annually over a period of twenty years; that at the time the bonds were authorized there were levied on the lands of the district assessments of benefits amounting to more than nine hundred thousand dollars; that the assessments so levied were not paid before the bonds were issued; and that the drainage assessments together with the said bonds constituted from the dates aforesaid a lien on the lands involved in this suit, and have continued to exist as such lien.

Section 9, c. 269, p. 338, Laws 1914, reads in part as follows: "The assessment or assessments so levied shall be a lien on all of the real property of the district from the time that the same is levied . . . and shall be entitled to preference to all demands, executions, encumbrances or liens whatsoever, and shall continue until such assessment, with any penalty and costs that may accrue thereon, shall have been paid. . . ." It is therefore the contention of appellee that by force of the express terms of the statute and under the agreed statement of the facts the lands covered by the contract were at the date of the contract incumbered by this drainage tax lien, and hence appellant was not then and has not since been invested with "a good and valid unincumbered fee simple title," which, according to the terms of the contract, she was required to convey—save only as to the Federal Land Bank mortgage and the taxes for 1930.

Appellant admits that the drainage assessments were a lien on the land and were such at the time of the making of the contract and at the time of the tender of the deed and will continue for several years to come. But appellant contends that these drainage assessments are

taxes; that appellee knew of the existence of the drainage district and of the drainage assessments; and that when, with this knowledge, appellee assumed "all 1930 taxes," the stated assumption included not only the drainage taxes for 1930 but also for all subsequent years. If the contract had provided in terms that appellee, the purchaser, "agrees to assume all 1930 taxes and for all the years thereafter," then the position of appellant would be unassailable under the opinion of this court in Building & L. Association v. Woodward, 159 Miss. 343, 131 So. 874. If, however, under the principles laid down in that opinion, no mention of taxes had been made in the contract, the tax lien would have existed against the land and as an incumbrance thereon for the year 1930 for both the ad valorem and the drainage taxes, and for the subsequent years for all the drainage taxes becoming due and collectible during said subsequent years.

Thus there is presented the narrow question whether the agreement by the purchaser "to assume all 1930 taxes" implies the further agreement to assume all drainage taxes for the subsequent years. Appellant contends that this was the understanding between the parties as evidenced by their negotiations previous to the actual execution of the contract, but this does not aid appellant unless the written contract itself will bear the interpretation contended for it by appellant. Martin v. Partee, 121 Miss. 482, 488, 83 So. 673. Nor is appellant aided by the fact that appellee knew of the drainage assessments. Sutton v. Cannon, 135 Miss. 368, 100 So. 24.

Appellant avers in her brief that in transactions of this kind, and in deeds of warranty, it has been the general understanding, generally acted upon, that it is not necessary to except drainage taxes out of a contract for an unincumbered title or out of a warranty deed, save for the current year, and that if this court should hold with appellee on this question, "it would cause a flood

of litigation such as would upset everything in the Delta;'' that the common acceptation of the situation in the Delta, as well as all over the state, has been that when a contract or deed specifies that the purchaser is to pay all the taxes of the current year, ''it necessarily means that he is to pay all taxes which fall due in subsequent years.'' We recite this argument to show that we are not unmindful of the situation and, in a measure, of the consequences, although we hope the result will not be entirely so serious as has been pictured before us. It may be that the parties in this case in drawing their contract acted upon the asserted common understanding in that section of the state, and that it was intended by them that the purchaser should assume the drainage taxes and the burden of the existing drainage assessment lien; but there is no prayer for a reformation of the contract in that respect, and no specific allegations in the bill upon which the attention of the trial court was or could be directed to that issue, and there is no insistence here that the contract should have been reformed by the court. The insistence by appellant is that the contract as it stands carries the agreement by implication that the purchaser should assume all subsequent drainage taxes and assessments.

So, we are directly requested to read into the written agreement between these parties a further provision, and to insert that provision to the same effect as if expressly therein written by the parties, that the purchaser would assume these drainage taxes and assessments not only for the year 1930, but ''for all subsequent years.'' To such a request we are constrained to return a negative response. It is fundamental in the performance of the judicial office that courts will enforce valid contracts as made between competent parties, but will never make contracts for the parties and then enforce them. Pieri v. Sevier (Miss.), 145 So. 97. And it is but a corollary of the principle just stated that, unless the implication

be indispensable or inescapable, courts will be reluctant to embark upon the dangerous venture of importing into an agreement, by declaratory resort to implication, what so far as the court may definitely know was not at the moment of the contract actually agreed upon by the parties, Southern R. Co. v. Franklin, etc., R. Co., 96 Va. 693, 32 S. E. 485, 44 L. R. A. 297, 299; and particularly must this be true where, as here, the parties have at much pains and in detail undertaken to reduce their agreement to such specific written terms as to evince their purpose to expressly cover every phase of their understanding. See 13 C. J. 558 et seq., and the numerous cases there cited; and 6 R. C. L., p. 857, under notes 18-20. It would be safer and more in accord with sound legal policy to refer cases, not fairly and justly clear on the face of the contract, to the remedy by way of reformation, wherein relief would be furnished only upon the dependable basis of clear and convincing proof, than to avail of inconclusive, argumentative construction by inference or implication.

Having concluded, therefore, that we are without rightful authority to amend the contract so as to make it read by implication as insisted upon by appellant, the decree of the chancery court must be affirmed.

Affirmed.