BEVIS CONSTRUCTION COMPANY, INC. *v.* KITTRELL, et ux.

No. 42179          March 26, 1962          139 So. 2d 375

*Pierce & Waller,* Jackson, for appellant.

*John M. Dunnam, Jr.,* New Augusta; *Curtis Breland,* Leakesville, for appellees.

Rodgers, J.

This case comes to this Court on appeal from a decree of the Chancery Court of Perry County, Mississippi, in which the Chancellor cancelled a contract and a deed

of trust executed by appellees, Fred M. Kittrell and Wife, Mary E. Kittrell, to appellant, Bevis Construction Company, on a certain house and one acre of land in Perry County. The Chancellor awarded appellees a judgment for $1,900 as damages for an alleged breach of contract to construct the house in question.

The dispute grew out of the following facts: On December 29, 1959, appellees, Fred M. and Mary E. Kittrell, entered into a memorandum contract with appellant, Bevis Construction Co., Inc., to construct a semi-finished house, commonly called a "shell home." At the time the memorandum contract was signed, Mr. and Mrs. Kittrell executed a deed of trust to Bevis Construction Co., Inc., for the sum of $6,200, payable in monthly installments, to secure the payment of the contract price of the house.

Mr. and Mrs. Kittrell lived in a house on the plot of land described in the trust deed, and it was understood that the new house insofar as work appellant was required to do, would be finished in approximately thirty days from the date of the contract.

Appellees permitted the house in which they were then living to be demolished, and it became necessary for them to rent a house in the Town of McClain, in which to live, while their new home was being constructed. There is considerable testimony in the record as to whether or not this "shell home" was constructed in a workmanlike manner, and whether or not the home was in a condition capable of being used for the purpose for which it was built. For example, it was shown by appellees that the windows and doors would not open, and that the earth could be seen through the floor. There was conflict in the testimony as to whether or not the house was finished on the inside as understood by the parties to the contract. There was also testimony that the electric wiring was not of proper size and gauge, and was in fact dangerous; and that the plumbing in-

stalled was not satisfactory. Appellant introduced evidence to show it offered to remedy the defects found and bring the house up to specifications of a semi-finished shell home. Appellees, on the other hand, claim that the house could not be put in a livable condition.

After having heard the testimony, the Chancellor entered a decree in which he found, as a matter of fact, that defendant was to erect and construct a residence for appellees for the sum of $6,200, and that it was understood and implied that the house would be constructed in a good and workmanlike manner, and in such a manner as to be safe from the standpoint of foundation and electrical wiring; and that the house generally was to be constructed in accordance with sound, acceptable and workmanlike manner. The court decided that the building contract was not carried out, because the house was not built substantially so as to last for a reasonable period of time. The court also found that appellees had a structure on the lot at the time the contract was made, and that destruction of this house in order to build the new home was a loss sustained by them. The court decided that for a period of nineteen months appellees were required to rent a home as a result of the breach of contract on the part of appellant, and they sustained damage in the sum of $100 a month for nineteen months, or $1,900. The court then permitted, and directed the defendant, Bevis Construction Company, to remove their building from the premises of the Kittrells, and were granted a period of sixty days in which to do so. However, appellant was directed not to move such structure, until the full sum of $1,900 had been paid to the appellees, the Kittrells. The cross-bill filed by Bevis Construction Company was dismissed.

Appellant cited the case of Goff v. Jacobs, 164 Miss. 817, 145 So. 728, in which the Court said: "It is fundamental in the performance of the judicial office that

courts will enforce valid contracts as made between competent parties, but will never make contracts for the parties and then enforce them.'' Appellant argues that appellees entered into a memorandum contract with them to construct a semi-finished house, commonly known as a ''shell-home.'' The memorandum contract called for ''a 20 x 40 Ashwood 1056 square feet'' (building.) Appellant claimed in the lower court, and argues here, that it built the house as specified in the memorandum contract; and that, as a matter of fact, a utility room was constructed which was not a part of the contract. Appellant admits that there were certain minor repairs necessary for them to make to bring the house up to their specifications of a shell home. Appellant also argues that it has offered to make the minor repairs that the company agents feel should be made, and after such repairs have been made, appellant argues that appellees, Mr. and Mrs. Kittrell, should be required to pay the note and deed of trust, or the court should require a sale of the property to satisfy the indebtedness. If, however, appellant is not permitted to make the minor repairs, it argued that it should only be required to pay damages in the small sum its officers believe necessary to bring the building up to their specifications of a shell home. Testimony for appellant shows the needed repairs amount to $450.

Appellees, on the other hand, claim that they were shown a ''model house'' by appellant, and that their home was to have been constructed and completed in accordance with the written contract entered into by and between the parties, and in the same manner of construction, workmanship, and with materials with which the demonstration home was constructed by Bevis Construction Co., Inc. at Hattiesburg, Mississippi. Appellees claim that certain additions were agreed to as a part of the written contract, which were not shown in the shell home shown them, to wit: ''installing 112 sheets

of sheetrock, not finished'', and two inside doors installed. It was also shown by appellees testimony that a carport was added but that this addition was a part of the contract, although this is not included in the written memorandum.

In view of the claim that the building was not properly constructed, and was inadequate and unacceptable as a shell home, the Chancellor permitted the introduction of evidence to show the cost of the building, including the various sub-contract prices. Charles K. Marshal was introduced by appellant, and testified as follows: ''Q. What is the standard price throughout their trade territory on this particular home? A. At that time, the house was $4,000, 'course they had additional extras such as, carport, utility room, wiring installed, sheetrock installed, the plumbing installed, which I don't know how much the manager charged for that material.'' The testimony also shows that the contract price for erecting the building was $600. The contract price for the electric wiring was $160. The witness Marshal had been an inspector for appellant, but at the time of the trial had gone into business for himself. He testified further: ''Q. Let me ask you a question and you answer to me honestly. If this was your house would you live in it? A. No, sir. Q. Do you put out this type work in your business? A. No, sir, with the exceptions of the items that I mentioned other than that the house would be accepted. Q. If this was your company building the house, would you leave it in the condition it's in now? A. No, sir. Q. Answer me honest, would you? A. No, sir, however, I might add that I sent a crew down there to straighten it out and like I mentioned before  *  *  *''

The proof of complainant, which the Chancellor adopted, showed that in many respects the house was not constructed in a workmanlike manner, and the contractor introduced by complainant testified that it could be

brought up to specifications for $1,000. It is not necessary to specify the various items making up this figure. In addition to that, the proof showed that the house was improperly wired and that it would cost $75 to correct the wiring. The proof further showed that the hot water heater was improperly vented and it would cost $35 to correct this vent.

The contractor who testified that it would cost $1,000 to bring the house up to specifications did not include replacing the sills and floor joists with creosoted lumber. He testified, however, as did other witnesses, that the sills and floor joists were partially painted with creosote. The specifications in the memorandum contract called for ''5′ sills 4 x 6, laminated and creosoted. Floor joists 2 x 6 creosoted.''

■■■ ■ We have carefully examined the record and testimony in this case, and we have come to the conclusion that the question of whether or not the contract entered into between the parties for the purpose of building a shell home was breached, was for the determination of the Chancellor. Moreover, we are convinced that there is ample testimony to sustain the finding of the Chancellor that Bevis Construction Company did not carry out its contract with the Kittrells, and that the house built by appellant is not an adequately constructed building as was contemplated by the parties. We cannot, therefore, hold that the Chancellor erred in this respect.

We think the only issue for determination here is whether or not the contract was substantially complied with to the extent that the Bevis Construction Company may pay appellees for the cost of bringing the building up to the contemplated specifications of a shell home, or whether or not the contract was breached in such manner as to justify a rescission and cancellation of the contract.

In the case of Standard Mill Work & Supply Company v. Mississippi Steel & Iron Co., 205 Miss. 96, 38 So. 2d 448, this Court said: "The common-law rule required a literal performance of building contracts, but the American courts generally hold that substantial performance of such contracts will support a recovery either on the contract or on a quantum meruit basis. Three reasons are given for that holding. One is that the materials and labor upon a building are such that even if rejected by the owner of the land he receives benefit thereof. Since the owner receives the benefits of the builders' labor and materials, it is equitable to require the owner to pay for what he gets. The second reason is that it is next to impossible for a builder to comply literally with all the minute specifications in a building contract. And the third is that the parties are presumed to have impliedly agreed to do what is reasonable under all the circumstances with reference to the subject of performance. 6 R. C. L., page 667, Sec. 343; 9 Am. Jur., page 30, Sec. 40; 17 C. J. S., Contracts, Sec. 508, page 1085; Hickory Investment Company v. Wright Lbr. Co., 152 Miss. 825, 119 So. 308." It is necessary in support of the foregoing doctrine that the contractor must have acted in good faith and not intentionally failed to perform the contract. The foregoing case is cited with approval in Hardin, et ux v. Beaman, 49 So. 2d 732 (Miss.). In the case of Jackson, et al. v. Caffey, et ux, 223 Miss. 368, 78 So. 2d 361, this Court mentioned the Standard Mill Work & Supply Company case, and said: "* * * that substantial performance is not literal, full or exact performance in every slight or unimportant detail, but performance of all important particulars; and that substantial performance exists where the building or structure as a whole is not impaired, where it can be used for its intended purpose after erection, where the defects can be remedied without any great expenditure and without material damage

to other parts of the structure and may without injustice be compensated for by deductions from the contract price.''

In the case of Smith, et al. v. Copiah County, et al., 239 Fed. 425, where the appellants claimed that Copiah County entered into a contract to build a gravel road and appellants were informed that the gravel could be obtained at a certain pit; but after having entered into the contract, it was discovered the gravel was not acceptable. The new overhaul was more than one mile from the pit and prohibitive in cost. The Court held that the decree sustaining the application for an injunction should be overruled and that ''* * * all additional costs, for completion of plaintiffs' contract, arising from its abandonment, should be assessed against them'', and that the county is entitled to recover from them all additional costs for the completion of the work.

In the case of U. S. Fidelity & Guaranty Company v. Parsons, et al., 147 Miss. 335, 112 So. 469, a Mrs. Parsons contracted with a Mr. McNeill to build a dwelling house on a lot which she owned, within a reasonable time for construction, completion and delivery, as described in the specifications and contract, but during the construction of the dwelling, it burned, and thereafter she was forced to contract with another contractor to build the house. The owner sued the builder on his bond and claimed a fair rental value of the premises for failure to deliver the completed building within a reasonable time, and the Court said: ''We think also that loss of rents by the owner should be recoverable for such reasonable time after the time the building should have been completed under the contract, as will permit the owner to complete the building, provided he does so promptly, and within a reasonable time.'' Citing 9 C. J. 812.

It was said in the case of Long v. Inhabitants of Athol, 196 Mass. 497, 82 N. E. 665, that upon can-

cellation of a contract because of a mutual mistake as to the amount of work to be done, the contractor may recover upon a quantum meruit for all that he has done.

It is apparent from our examination of this record that the Bevis Construction Co., Inc. has substantially complied with its contract to build a shell home. The pictures exhibited in the record show that the building is substantially completed. Appellants, therefore, should be required to pay for the completion of the building to the specifications of a semi-finished shell home.

The mere fact that there was a delay in the performance of a building contract will not terminate nor justify rescinding it. See 12 Am. Jur., Contracts, Sec. 441, p. 1022.

We are therefore of the opinion that the Chancellor had substantial testimony on which to base his opinion that the contract had been breached by the Bevis Construction Company, but we hold that the construction of the building had progressed sufficiently for us to determine that the contract to build a shell home had been built in substantial compliance with the written contract and a verbal understanding between the parties.

Since there was a substantial compliance with the contract, the Chancellor was in error in holding that the contract should be cancelled, and the building moved from the appellees' land. The chancery court should have awarded damages to appellees for the failure of the Bevis Construction Company to carry out its agreement with them in a sum sufficient to finish the construction of the building; or a sum sufficient to bring the building up to the specifications of the contract and agreement between the parties, together with such other damages due them as was shown to have grown directly out of the failure of the Bevis Construction Company to carry out its contract and understanding.

The testimony on behalf of appellees shows that it will require $1,000 for necessary materials and carpen-

try to complete the house. It was further shown that it will cost $75 to correct the wiring and $35 to correct the hot water vent in the house. In our opinion the painting of the surface of the sills and floor joists with creosote paint, even if they had been completed, did not satisfy the specifications of the contract. The sills and floor joists should have been impregnated with creosote oil. Webster's 3rd New International Dictionary defines the verb "creosote" as follows: "To impregnate (wood) with creosote oil." It will therefore be necessary for the Chancellor to determine on a new trial how much damages should be awarded appellees because of the failure of appellant to comply with the building contract with reference to creosoted sills and floor joists.

■■ ■ Although the testimony shows that appellees were required to rent another home for a period of nineteen months at the time the contract was made, it was understood that they would be out of their home for thirty days and no rent can be collected for loss of the use of the house for the first thirty days. The court should, however, allow damages to appellees for a reasonable rental, not to exceed the rent paid.

Under the prayer for general relief in the appellees bill of complaint, the court may do equity by allowing credit to them for such total damages as the chancery court may determine to be due appellees in accordance with the above-mentioned items of damage. Moreover, appellant should not be permitted to collect interest on the note due by appellees during the time appellant has failed to carry out its contract to finish the building and until a final decree is entered. The court may also consider the adjustment of the due dates for the payments under the note and deed of trust.

The decree of the chancery court insofar as it holds that the contract was breached by appellant will be affirmed, but in all other respects the decree will be re-

versed, — the cancellation of the contract, the order to remove the building from the property of appellees, and the cancellation of the note and deed of trust will be set aside, and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

*Kyle, Jones, Gillespie* and *McElroy, JJ.,* concur.