744 So.2d 390 (1999)
Carl L. LADNER and Nelda C. Ladner, Appellants,
v.
Mark MANUEL and William Manuel, Appellees.
No. 1998-CA-01009-COA.
Court of Appeals of Mississippi.
June 22, 1999.
*391 Walter W. Teel, Jackson, Attorney for Appellant.
Michael Durrett Haas, Jr., St. Louis, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., COLEMAN, AND THOMAS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. A Hancock County Circuit Court jury awarded Mark Manuel $11,600 for breach of an oral contract. The defendant Carl Ladner appeals alleging that the trial court gave an erroneous jury instruction on the method of calculating damages. We find the instruction proper and affirm.

FACTS
¶ 2. In September of 1995, the plaintiffs, Mark and William Manuel, entered into an oral contract with the defendants, Carl and Neldra Ladner. The Manuels orally agreed to construct a dam on the Ladners' property, located in Hancock County. The parties subsequently met at the site to discuss the construction of the dam. At that point, William Manuel informed Carl Ladner that he had previously constructed one dam, that it was on his own property, and someone else had told Manuel that he would have done the work for about $1500. Manuel estimated that the Ladner job was three times the work, but testified that there was no agreement to any price. On the other hand, Ladner testified that the agreed price was $1500.
¶ 3. The Manuels' testimony was that after preliminary work on the dam began, Ladner decided to move the placement of the dam further down the hill, which allowed a higher dam and a deeper pond. Ladner says moving the dam was the Manuels' idea, that the distance moved was minor, and there was no discussion of an increased price. Over the next three weeks, the Manuels testified that work on the site continued with heavy equipment, including bulldozers and track hoes. Trees and their roots were removed, and a wide area that would be the base of the dam was dug out to reach the proper soil from which to start building. At several points during the construction, the Manuels experienced problems with the equipment, principally in getting stuck in the mud. Therefore, there were delays in the construction of the dam.
¶ 4. The Manuels maintain that after having spent several weeks on the project, Ladner approached them to inquire as to the price of the work accomplished up to that point. When the Manuels informed Ladner that the cost was somewhere around $10,000, the Manuels allege that Ladner told them to stop work on the project immediately because he was not able to pay the requisite amount. Ladner, on the other hand, maintains that he fired the Manuels from the project because the work was unsatisfactory. There is no doubt that the work stopped. William Manuel testified that the dam had by that time reached a height of 15 to 18 feet.
¶ 5. Ladner on the other hand said that the dam was only 5 feet high. He said *392 that the project was only a little more than half finished.
¶ 6. The Manuels brought this suit against Ladner to be compensated for the work that had been conducted on the property. After a jury trial, a verdict in favor of the Manuels for $11,600 was reached. Judgment was entered and this appeal has followed.

DISCUSSION
¶ 7. The only issue on appeal is whether the jury instruction that damages would be "a reasonable amount for the equipment and labor" was erroneous.
¶ 8. The Ladners do not challenge the validity of the oral agreement in this case. When they satisfy legal requirements, "oral contracts are enforceable in Mississippi and we recognize a cause of action grounded on breach of an oral contract." R.C. Constr. Co. v. National Office Sys., Inc., 622 So.2d 1253, 1255 (Miss. 1993). What we have is an oral contract for an agreed purpose, but without an agreed or even particularly discussed compensation.
¶ 9. The present case is factually similar to Stanton & Assoc. v. Bryant Constr. Co., Inc., 464 So.2d 499 (Miss.1985). In Bryant, the defendant contractor contracted with the plaintiff subcontractor to help the defendant clear twenty-four acres of land. Id. at 501. The parties orally agreed that the plaintiff would be paid by the hour, but the amount to be paid per hour was not discussed. Both participated in the clearing of this area of land. Suit was brought to resolve the percentage of work that each party performed on the job. The proof offered by the plaintiff was the fair value of the use of its equipment per hour, and an estimate of the number of hours of use on the project. Id. at 506. That calculation led to $16,405.30, which was awarded. The defendant argued that the proper measure of damages was to set an overall value to the project, and then determine the percentage of the work performed by each party. Under that approach, damages would have been $7,200. Id.
¶ 10. The supreme court affirmed the award of damages determined on the basis of hourly bulldozer use. The court concluded that this was an unliquidated claim on an oral contract, and was properly to be paid on the basis of quantum meruit. As was held in a case cited in Bryant.
In Hickman v. Slough, 187 Miss. 525, 193 So. 443 (1940) this Court ... allowed compensation for a claim for services on quantum meruit and stated:
Where there is a promise, either express or implied, to pay for services rendered, and the amount of the compensation is not agreed upon, the law will imply an obligation to pay on a quantum meruit.

Wiltz v. Huff 264 So.2d 808, 811 (Miss. 1972), cited in Bryant, 464 So.2d at 503. "The measure of compensation is the reasonable value of materials and services rendered...." Estate of Johnson v. Adkins, 513 So.2d 922, 926 (Miss.1987).
¶ 11. Ladner's insistence that compensation be based on proof of the reasonable price for doing similar work in the locale does not need to be seen as a separate measure, but just as a possible means of proof of what was the reasonable value of the services. To the extent the Manuels presented their view on the value of their services, they could have supported the proof with evidence of other contractor's charges. Ladner could have rebutted the proof actually presented with his own witnesses regarding reasonable charges by others. The weaknesses in proof were for argument and ultimately credibility choices by the jurors.
¶ 12. Ladner also argues that a quantum meruit recovery is not permitted unless the contract is substantially performed. The instruction on damages that Ladner contests on appeal required that the jury find that the Manuels "substantially performed their duties" towards Ladner by "supplying the equipment, labor and doing *393 the work," then damages should be paid. He points out that there was no direction to the jury on what substantial performance meant. We first note that there was no objection in the trial court to the absence of an instruction defining the phrase and not even any discussion of the concept. So the question is not preserved.
¶ 13. Whether there must be substantial performance is a more general issue beyond the instruction. There is agreement that more work would have to be done on the dam, but apparently a conflict as to how much more. The authority cited by Ladner concerns builders' contracts and pointed out that the "common-law rule required literal performance of building contracts, but the American courts generally hold that substantial performance of such contracts will support a recovery either on the contract or on a quantum meruit basis." Standard Millwork & Supply Co. v. Mississippi Steel & Iron Co., 205 Miss. 96, 110, 38 So.2d 448, 450 (1949), overruled in part, IP Timberlands Operating Co. v. Denmiss, 726 So.2d 96, 103 (Miss.1998) (rejected Standard Millwork arbitration holding), cited in Jackson v. Caffey, 223 Miss. 368, 371, 78 So.2d 361, 362(1955). Three reasons are said to justify the substantial performance as opposed to literal performance rule:
One is that materials and labor upon a building are such that even if rejected by the owner of the land he receives benefit thereof. Since the owner receives the benefits of the builder's labor and materials, it is equitable to require the owner to pay for what he gets. The second reason is that it is next to impossible for a builder to comply literally with all the minute specifications in a building contract. And the third is that the parties are presumed to have impliedly agreed to do what is reasonable under all the circumstances with reference to the subject of performance.
Bevis Construction Co., Inc. v. Kittrell, 243 Miss. 549, 558, 139 So.2d 375, 378 (1962). As was the situation in the three cases already cited on this issue, this limitation on quantum meruit recoveries has been applied to construction of buildings or their additions. See also Garner v. Hickman, 733 So.2d 191 (Miss.1999); Hardin v. Beaman, 49 So.2d 732 (1951).
¶ 14. Had the Manuels not substantially performed through a breach of their own obligations, their claim for damages under any theory would probably fail. However, Ladner testified that he fired the Manuels, which would make additional performance on the project impossible. The issue of whether the Manuels had breached the contract was presented to the jury, and the jury's verdict indicates that no breach was found. Chief Justice Sydney Smith addressed the effect of the owner's preventing completion of a building contract:
[The builder], having failed to carry out his contract to build the house, can recover the value of materials used therein and labor expended thereon by him only in event his failure so to do was the result of a prior breach of the contract by [the owner].
Robinson v. DeLong, 118 Miss. 280, 79 So. 95, 96 (1918). Therefore, if the party seeking quantum meruit recovery has been prevented by the other party from completing its obligations under the contract, the fact that there might not have been substantial performance would not prevent recovery.
¶ 15. The evidence introduced in the present case included after-the-fact time sheets that the plaintiffs prepared apparently for trial that specified the number of hours of use of different equipment and a price per hour. William Manuel testified that this represented an accurate statement of the hours. Mark Manuel testified that he was in charge of keeping track of the time and expenditures on a daily basis. In addition to the time sheets, the Manuels also produced various invoices from the rental equipment company, thereby establishing, for example, that the plaintiffs paid $4,117.36 for the bulldozer used on the project.
*394 ¶ 16. The Ladners contested the accuracy of this information, argued that some of the hours were spent with the equipment wallowing in mud and not working, and otherwise challenged the evidence as having inflated the costs. Those matters were presented for the jury's resolution, and apparently the jury accepted the information as credible. That was a permissible view.
¶ 17. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.