757 So.2d 311 (2000)
The SUMRALL CHURCH OF THE LORD JESUS CHRIST, Appellant,
v.
Wayne JOHNSON d/b/a Johnson Electric, Appellee.
No. 1999-CA-00459-COA.
Court of Appeals of Mississippi.
February 8, 2000.
*312 William L. Ducker, Purvis, Attorney for Appellant.
William Jenkins Gamble, III, Attorney for Appellee.
BEFORE KING, P.J., DIAZ, AND IRVING, JJ.
IRVING, J., for the Court:
¶ 1. Wayne Johnson, d/b/a Johnson Electric (Johnson), filed a complaint against Sumrall Church of the Lord Jesus Christ (Sumrall) for breach of an electrical construction contract. Sumrall filed a counterclaim alleging faulty workmanship. A Lamar County Circuit Court jury awarded Johnson $7,426 in compensatory damages and $1,856.50 in attorneys fees for a total judgment of $9,282.50. Sumrall appeals alleging that the trial court erred in refusing to grant jury instruction D-6. Sumrall also argues that the verdict rendered by the jury was against the overwhelming weight of the evidence. Lastly, Sumrall argues that the trial court erred in refusing to grant a new trial. Finding error as to the award of attorney's fees, we affirm in part and reverse and render in part.

*313 FACTS
¶ 2. Johnson entered into a contract in the amount of $31,200 with Sumrall to do the electrical wiring for its family life center. After the completion of the first phase of the construction, Sumrall paid Johnson $22,700 in successive draws. However, Sumrall, claiming poor workmanship, refused to pay the balance of the contract.

ANALYSIS OF THE ISSUES PRESENTED

I. Jury Instruction D-6
¶ 3. Sumrall maintains the trial court erred in failing to properly instruct the jury. Specifically, Sumrall contends that defense instruction D-6 was improperly denied, thus preventing the church from presenting any instruction as to its theory of the case. Sumrall claims that the trial court, in replacing jury instruction D-6 with jury instruction five, placed the burden of proof on Sumrall rather than on Johnson. Sumrall further argues that the jury was prevented from considering the church's counterclaim for poor workmanship. Instruction D-6, as proposed by Sumrall, reads as follows
The Court instructs the Jury that if you find from the evidence the Defendant, The Sumrall Church of the Lord Jesus Christ, paid the Plaintiff, Johnson Electric, $24,000.00 in draws on a total contract bid price of $31,200.00 and when a dispute arose about the quality of work being performed and completion of said work, the Plaintiff placed a lien on Defendant's property, and if you further find that Defendant was forced to employ another electrician to finish the job as well as making remedial carpentry repairs because of Plaintiff's poor quality, non-workmanlike construction then you shall find against the Plaintiff and for the Defendant on its counter/claim.
The trial judge rewrote the instruction to read as follows:
The Court instructs the jury that if you find from the evidence that the Defendant, The Sumrall Church of the Lord Jesus Christ, paid the Plaintiff, Johnson Electric, $24,000.00 in draws on a total contract bid price of $31,200.00 and when a dispute arose about the quality of work being performed and completion of said work, the Plaintiff placed a lien on Defendant's property; and if you further find that Defendant was forced to employ another electrician to finish the job as well as making remedial carpentry repairs because of plaintiff's poor quality, non-workmanlike construction then you shall reduce the amount due under the contract to the plaintiff by the amount defendant had to expend to correct any deficiency in the work under the contract.

(emphasis added).
¶ 4. In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. Coleman v. State, 697 So.2d 777, 782 (Miss.1997). If the instructions, when so read, fairly announce the law of the case and create no injustice, no reversible error will be found. Id. Further, instructions on damages must furnish the jury with a guide to be used in awarding damages. Gerodetti v. Broadacres, Inc., 363 So.2d 265, 266 (Miss.1978). Instruction D-6 as requested by Sumrall is an erroneous statement of the law based on the facts of this case and was properly denied by the trial court.
¶ 5. The record reflects that Johnson substantially performed and completed his duties under the contract, but Sumrall stopped payment of the last draw due to Johnson's alleged shoddy workmanship. When a contractor substantially performs the terms of the contract, substantial performance will support recovery either on the contract or on a quantum meruit basis. On the other hand, depending on the nature of the breach, a recission or cancellation of the contract may be justified. If recission or cancellation is warranted, *314 the contractor is entitled to recover on a quantum meruit basis for the work performed. See Bevis Constr. Co. v. Kittrell, 243 Miss. 549, 558-60, 139 So.2d 375, 378-79 (1962), (quoting Standard Millwork & Supply Company v. Mississippi Steel & Iron Co., 205 Miss. 96, 38 So.2d 448 (1949)).
¶ 6. When a contractor performs substantially, yet fails to carry out the terms and conditions of his agreement, damages should be awarded to the nonbreaching party (1) on a cost basis in a sum sufficient to bring the building up to the specifications of the contract and agreement between the parties (Bevis, 243 Miss. at 560, 139 So.2d at 380), or (2) on a diminished value basis of the defective building as compared to what its value would have been had it been constructed properly. A jury should be adequately instructed on how to compute those damages based on the nature of the defects. Damages may be ascertained as to some defects by using the cost rule while it may be necessary to use the diminished value rule in computing other damages. That this is the proper measure and manner of computing damages when a contractor has breached, but yet substantially performed his construction contract, is made amply clear by the Gerodetti court in the following passage:
Where a building is completed, substantially according to plans and specifications, the measure of damages may be determined by: (1) the cost rule which is the cost of repairing the defects to make the building or structure conform to the specifications where such may be done at a reasonable expense if unreasonable economic waste is not involved, or (2) the diminished value rule which is the difference in the value of property with the defective work and what the value would have been if there had been strict compliance with the contract. The diminished value rule applies where the defects cannot be remedied without great sacrifice of work or material or would impair the building, or would involve unreasonable economic waste, or where the defects cannot be repaired at a reasonable cost, or where it is not reasonable or practicable to remedy the defects, or where the cost of remedying the defects will not fully compensate the owner for damages suffered by him. (citations omitted).
Gerodetti, 363 So.2d at 268.
¶ 7. It is apparent from the record that Sumrall's damages, if proven, should be calculated in accordance with the "cost rule." Sumrall's counterclaim alleged that the church sustained damages for money expended to make remedial repairs. Sumrall did not allege that the defects could not be remedied without great sacrifice of work or material or that remedying the defects would impair the building. Nor did Sumrall allege that remedying the defects would involve unreasonable economic waste, that the defects could not be repaired at a reasonable cost, that it was not reasonable or practicable to remedy the defects, or that the cost of remedying the defects would not fully compensate the owner for damages suffered by the church. In its brief, Sumrall argues that Johnson's breach was material and that as a result of said breach, Sumrall was entitled to terminate the contract.
¶ 8. The gravamens of Sumrall's counterclaim follows:
That the Plaintiff and Counter/Defendant contracted with the Defendants and Counter/Claimants to do the electrical work on the new Family Life Center at the Sumrall Church of the Lord Jesus Christ for the amount of $31,200.00; that the Defendants and Counter/Claimants paid unto the Plaintiff and Counter/Defendant $21,576.00 in good faith on successive draws. However, when the building was inspected by the appraisers for the bank, the electrical work was found to the (sic) substandard and Rev. Pullens and the building committee were advised to withhold the balance of *315 the Plaintiff and Counter/Defendant's funds until repairs and other work was completed that was required to make the job come to specifications. There were 19 breakers not installed in the power box so that at various places when one switch is thrown, others go off. Specifically in the kitchen the microwave will throw the switches in the hall and the ladies restroom when it is turned on. The outside transformers did not work and had to be replaced. The electricians informed the building committee that they needed a space 2 × 4 feet to put the light fixtures in and the contractor, when the trusses were nailed in, allowed space for such an opening. However, when Plaintiff and Counter/Defendants came with the light fixtures, they would not fit the holes as prescribed and the electricians bent the trusses back so that the fixtures could be installed thereby breaking loose sheet rock from the ceiling that had to be replaced at a cost of $180.00 per light fixture for 25 lights or a total of $4,500.00.
* * * *
[Sumrall] would hereby assert that the faulty workmanship performed by Johnson Electric has made their entire building appear substandard. That it was only after some remedial work was done by one of the members of the congregation, who is an electrician, that the subject building was able to pass the electrical inspection done by the insurance company for Defendant and Counter/Claimant.
A simple reading of the allegations of the counterclaim makes it clear beyond doubt that while the counterclaim does contain an allegation that "their entire building appear substandard," the crux of the counterclaim is that the work performed by Johnson was shoddy and it could be, and was corrected, by other persons. Under these circumstances, Sumrall was not entitled to a termination, cancellation or recission of its contract.
¶ 9. Sumrall further argues, however, that the jury was prevented from considering the church's counterclaim for poor workmanship. In its counterclaim, Sumrall demanded judgment in the amount of $26,000, but at trial, Sumrall only presented evidence of $8,126 in damages. Further, at the time of the trial, the building had been repaired and was being used by Sumrall. Sumrall was entitled to recover only damages that were reasonably expended to repair the building. Allowance of damages beyond this amount would constitute an unlawful and unjust enrichment of Sumrall. See Wright v. Stevens, 445 So.2d 791, 796 (Miss.1984). Sumrall presented no evidence to bring its claim for damages within the clutches of the "diminished value rule" which would allow it to recover damages based on the difference between the present value of the building and what the value would have been had the building been constructed in a work-manlike manner. Even if Sumrall had presented evidence sufficient to justify a decision to compute damages under the "diminished value rule," it neither presented nor attempted to present any evidence of the different values of the building.
¶ 10. While jury instruction D-6 as revised by the court, did not clearly advise the jury on how to compute damages due Sumrall, if any, Sumrall suffered no harm by this inadequacy because the jury found against it. The revised jury instruction allowed the jury to consider whether Johnson performed in an unworkmanlike manner. Any faulty workmanship, vel non, on the part of Johnson was a question for the jury, and the jury resolved it against Sumrall.

II. The Sufficiency of the Evidence
¶ 11. Under this assignment of error, Sumrall reargues its position that instruction D-6 as requested by it should have been granted, and that the refusal of the court to grant the instruction caused the jury to return a verdict against the overwhelming weight of the evidence. Sumrall *316 also argues that the award of twenty-five percent attorney's fees was punitive and therefore against the overwhelming weight of the evidence because there was no evidence upon which an award of punitive damages could have been awarded.
¶ 12. A perusal of Johnson's complaint reveals no allegation of, or claim for, punitive damages, nor does it reveal any contract-based claim for attorney's fees. It does, however, make claim alternatively that the amount was due pursuant to an open account and that he was entitled to attorney's fees under this theory of recovery. It is clear to us that Johnson's claim lay exclusively in contract. Thus, there was no basis for the award of attorney's fees. Upon careful review of the record, we find that Sumrall did not raise the issue of attorney's fees in the trial court in either its motion for JNOV or its motion for new trial. Thus, it is procedurally precluded from raising the issue here for the first time. Leverett v. State, 197 So.2d 889, 890 (Miss.1967). The purpose for requiring specific objections is to avoid costly new trials and to allow the offering party an opportunity to obviate the objection. Id. The trial court cannot be put in error unless it has had an opportunity to pass on the question. Id. However, notwithstanding the procedural bar, we feel compelled, in light of the pleadings and evidence adduced at trial, to notice the award of attorney's fees as plain error. Accordingly, we reverse and render that portion of the judgment awarding attorney's fees in the amount of $1,856.50. Thus, Sumrall's last issue concerning the alleged error of the trial court in not granting him a new trial to correct the award of attorney's fees need not be addressed in light of our treatment of this issue here.
¶ 13. The propriety of denying Sumrall's D-6 instruction has already been addressed; therefore, there is no need to revisit this issue in any great detail. It is sufficient to say that the revised jury instruction given by the trial court instructed the jury to take into account the money expended by Sumrall to make remedial repairs if it found that Sumrall was forced to employ another electrician due to Johnson's unworkmanlike performance. Further, conditioned upon a finding that Johnson's work fell below the appropriate standard, the revised instruction instructed the jury to deduct the amount Sumrall expended for repairs, to bring the building up to standard, from the amount due Johnson under the contract. This was the proper thing to be done under the facts of this case and the law to be applied. See Bevis, 243 Miss. at 561, 139 So.2d at 380; Gerodetti, 363 So.2d at 268.
¶ 14. JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT IS AFFIRMED AS TO THAT PORTION WHICH AWARDS WAYNE JOHNSON, D/B/A JOHNSON ELECTRIC, $7,426.00 FOR BREACH OF CONTRACT BUT IS REVERSED AND RENDERED AS TO THE AWARD OF ATTORNEY'S FEES IN THE AMOUNT OF $1,856.50. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.