# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01310-COA

| | |
|---|---|
| **MAGDI CORPORATION AND MOHAMED RAWAID** | **APPELLANTS** |

**v.**

| | |
|---|---|
| **BERUK CONSTRUCTION, INC. AND FASIL KEBEDE** | **APPELLEES** |

| | |
|---|---|
| DATE OF JUDGMENT: | 08/06/2024 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JOHN S. GRANT IV |
| ATTORNEY FOR APPELLEES: | MARVIN REID STANFORD |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 04/07/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., LAWRENCE AND EMFINGER, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.    In 2019, Mohamed Rawaid, owner of Magdi Corporation, hired his friend Fasil Kebede with Beruk Construction Inc. to build an approximately 6,500 square-foot gas station and shopping center.[1] Their friendship and working relationship turned sour, and Magdi sued Beruk for breach of contract. A bench trial on June 12, 2024, resulted in a dismissal of the case in favor of Beruk. Rawaid appealed, arguing that the evidence presented at trial proved that Beruk breached the contract. After review, this Court finds that the chancellor manifestly erred by granting the dismissal, and we reverse and remand the case for further

---

[1] The record contains an alternative spelling of "Kebede" as "Kabede."

proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2018, Rawaid and Beruk entered into a contract for the construction of a gas station and shopping center in the City of Olive Branch.[2]  On July 2, 2018, the parties entered into an addendum to the contract.  There is no dispute between the parties that the addendum and the contract operated together to dictate the expectations of the project.  The addendum provides that in the event of a conflict between the two documents, the contract controls.  According to the contract, Beruk agreed to complete the construction for a price of $898,000.  Further, Beruk would "achieve Substantial Completion of the entire Work not later than 180 calendar days from the Date of Commencement[.]"  The contract further provided that Rawaid would pay Beruk progress payments based on payment applications that Beruk would submit to Rawaid.

¶3.     Beruk began work on March 28, 2019.  Rawaid and Beruk's working relationship became increasingly adverse, with multiple alleged instances of Rawaid losing his temper with Beruk.  In December 2019, Beruk asked Rawaid, via email, to not return to Beruk's office and to only meet with him on the job site.

¶4.     Rawaid made eight progress payments to Beruk from March 2019 to September 2019. The last application for payment Rawaid paid or partially paid was Beruk's eighth

---

[2] The contract was not signed and is dated April 3, 2018. There is an attached exhibit to the contract that is signed by Fasil and dated May 14, 2018. Regardless, the parties do not dispute the creation of the contract.

application for payment, dated September 10, 2019, which requested payment of $75,988.[3] In December 2019, Beruk sent Rawaid a change-order invoice for $5,482.72 and a ninth application for payment for $29,000. On February 5, 2020, Beruk sent Rawaid a final notice requesting payment in the amount of $34,482.74 and ceased working on the project. The February 2020 invoice was not paid, and Rawaid subsequently hired Murphy and Sons Inc. to finish the work.

¶5.     On May 18, 2020, Magdi Corporation and Rawaid filed this suit against Beruk Construction for breach of contract and damages.[4] A bench trial was held on June 12, 2024. Rawaid and Matthew Murphy, of Murphy and Sons Inc., provided testimony at the hearing.

¶6.     Rawaid testified that in May 2018, he hired his friend Fasil Kebede with Beruk Construction to build a gas station and shopping center with three strip mall bays for $898,000. Rawaid stated that after the building was framed, he became disappointed in Fasil's work. Eventually, Rawaid and Fasil began to argue over Fasil's work. Rawaid testified to specific actions that Fasil failed to install or installed improperly—gas lines from the street into the kitchen, stainless steel vent hood, flooring throughout the store, hand dryers in the men's bathroom, and "hot water for each bay."

¶7.     Rawaid testified that Fasil installed a 3-ton air-conditioning unit instead of a 5-ton unit that was agreed to in the contract. According to Rawaid, Fasil made no attempt to correct

---

[3] Beruk testified at trial that Rawaid only paid $50,000.

[4] Included in the complaint was a request to vacate or expunge Beruk's lien against the property. This issue is not raised on appeal. Additionally, Beruk filed a cross-claim for breach of contract that is not raised on appeal.

the issue when Rawaid brought it to his attention. Further, Fasil did not test the unit when it was installed, and it was later discovered that it was incorrectly wired.

¶8. Rawaid testified to other issues with Fasil's workmanship. The glass front doors were incorrectly installed with a gap between the doors. When the HVAC was corrected and turned on, condensation appeared on the glass windows and doors. Fasil did not install emergency exits, certain lights did not work, and at least one of the back doors would not open.

¶9. Rawaid stated that he continued to pay Fasil, despite his concerns, but felt that Fasil was not truthfully reporting his completion of the projects on his payment applications. For example, Rawaid testified that in June 2019, he paid $49,600 for a walk-in cooler. Fasil's payment applications in September 2019 reported that the walk-in cooler was 100% completed; however, photographic evidence from September 2019 revealed that the cooler had not been installed. Rawaid also stated that he paid for part of the HVAC system in June, but it was not completed when Fasil left the job in September.

¶10. Rawaid testified that he hired Murphy and Sons in April 2020 to finish the project. Rawaid also hired subcontractors, independent of Murphy and Sons. Hendricks Sheet Metal had agreed with Fasil to install the vent hood in the kitchen. When Rawaid contacted them about completing the job, they informed Rawaid that they had never been paid. Rawaid then directly paid Hendricks to complete the kitchen vent hood. Rawaid paid Airman Air Conditioning to complete the work on the HVAC system and replace the 3-ton unit. Rawaid also hired Dees Oil Company Inc. and Baine Brothers to complete the parking lot. Invoices

4

from Dees Oil and Airman were submitted into evidence along with a copy of a check from Rawaid to Hendricks Sheet Metal. The work was finally completed in July 2020, and the store opened in August 2020.

¶11. Deposition testimony from Matthew Murphy was introduced at trial.[5] Murphy testified that when Rawaid contacted Murphy and Sons, Murphy went to the project site in February or March of 2020 to evaluate its status. Murphy stated that the project was "obviously incomplete" and that his main goal was to "get a substantial completion and have the City let [Rawaid] sell gas and cigarettes and beer." Murphy explained many of the issues he observed with Fasil's workmanship—incorrect electrical receptacles were installed, power to the fuel panels was not connected, there was no parking lot, dirt work was incomplete, there was no erosion control, sinks were not "hooked up[,]" drink fountains were leaking, gas lines were not connected from the street, the kitchen vent hood was not connected, the walk-in cooler was not connected, wall panels were pealing, the glass doors were "letting air in[,]" glass in the store was "sweating," emergency exit signs did not meet code requirements, the breaker panel was unlabeled, exhaust fans in the bathroom were not installed, waterlines were not insulated, and the air conditioning was not finished.

¶12. Additionally, Murphy testified to structural issues with the project. The entire wall across the back of the building had to be bricked to cover the air-conditioning units, as required by the City. One of the store walls behind the register had to be reinforced, as Murphy explained that "if somebody leaned against it, they would, more than likely fall and

---

[5] The parties represent that Matthew Murphy was an expert witness.

5

bust their head open on the ground." Murphy's workers also dug footings, poured a concrete pad, and built a gate for the trash dumpster enclosure. Additionally, metal "R panels," installed on the back wall of the building were falling down and needed to be refastened to the building. A month after attaching the "R panels," a screen wall built on the roof by Fasil blew over and had to be repaired. Murphy and Sons also installed all landscaping, sod, and irrigation.

¶13. Murphy further advised that the project was "incomplete, for one, and substandard." He noted multiple issues that were not done according to the plans or code requirements: 15 amp electrical receptacles, instead of 20 amp receptacles; 3-ton air-conditioning unit instead of 5-ton units; the screen wall that fell over, the "R panels" that needed refastening, and dirt from the project that was running into the street without proper erosion control. He stated that the project would not pass electrical inspections by the City of Olive Branch without the electrical issues being corrected. He also stated that Rawaid "was lucky" to have avoided a fine from the State of Mississippi with the amount of dirt and mud washing into the storm drain system from the lack of erosion control.

¶14. Murphy testified that the project was approximately 65 to 70% complete prior to his involvement. He added that "[i]f we take the parking lot issues out of it and have building related and, you know, landscaping type stuff, might have been 80 to 85."

¶15. At the close of Magdi's evidence, Beruk moved for a directed verdict. The chancellor granted the motion from the bench. An order dated July 1, 2024, contained the chancellor's factual findings and conclusions of law.

¶16. The chancellor found that Rawaid breached the contract by failing to pay Beruk for a change-order invoice and a ninth application for payment. Further, the chancellor determined that Rawaid waived the 180-day calendar obligation by making a payment on September 10, 2019. The chancellor found that Rawaid and Murphy testified that the project was 80% completed, which was substantial completion under the contract. Finally, the chancellor determined that Rawaid "failed to present any evidence that he had a right to suspend, terminate or not pay" Beruk.

¶17. Rawaid filed a motion for reconsideration, which was denied by the chancellor's final judgment on August 6, 2024. On November 20, 2024, Rawaid timely filed this appeal.

## STANDARD OF REVIEW

¶18. Although Beruk moved for directed verdict, and the chancellor stated the motion for directed verdict was granted, we find that "the appropriate motion in a case tried without a jury is not a motion for directed verdict, but for involuntary dismissal, pursuant to Rule 41(b) of the Mississippi Rules of Civil Procedure."[6] *Gulfport-Biloxi Reg'l Airport Auth. v. Montclair Travel Agency Inc.*, 937 So. 2d 1000, 1004 (¶13) (Miss. Ct. App. 2006). A motion to dismiss under Mississippi Rule of Civil Procedure 41(b) is different from a directed verdict in that it requires the judge to "consider '*the evidence fairly*, as distinguished from

---

[6] Rawaid raises this as an argument on appeal. Beruk argues that the issue is waived because Rawaid did not raise it before the trial court, but Beruk urges that the chancellor's use of a directed verdict under Mississippi Rule of Civil Procedure 50(a) instead of Rule 41(b) is not reversible error. Beruk requests this Court to simply apply the correct standard of review, which is more demanding. As the parties are in agreement, and the standard of review is more strenuous under Rule 41(b) than Rule 50(a), we will apply the correct standard, which is the "substantial evidence/manifest error standard," and not reverse on this issue. *Stewart*, 700 So. 2d at 259.

7

in the light most favorable to the plaintiff,' and the judge should dismiss the case if it would find for the defendant." *Stewart v. Merchants Nat'l Bank*, 700 So. 2d 255, 259 (Miss. 1997) (quoting *Century 21 Deep S. Prop. Ltd. v. Corson*, 612 So. 2d 359, 369 (Miss. 1992)). Although an order granting a motion for a directed verdict is reviewed de novo, this Court "applies the substantial evidence/manifest error standards to an appeal of a grant or denial of a motion to dismiss pursuant to M.R.C.P. 41(b)." *Id.*; *see Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 872-73 (¶3) (Miss. 2006). "Manifest error is that error which is unmistakable, clear, plain, or indisputable." *Wheat v. Wheat*, 37 So. 3d 632, 636 (¶11) (Miss. 2010) (citing *Magee v. Magee*, 661 So. 2d 1117, 1122 (Miss. 1995)).

## ANALYSIS

¶19. Rawaid contends that the chancellor erred by granting Beruk's motion for directed verdict. Rawaid argues that the chancellor incorrectly found that he and Murphy "both testified that the Project was Eighty Percent (80%) completed which the [c]ourt concludes is substantial completion pursuant to the Contract."

¶20. The contract does not define "substantial completion," but it does provide, in Section 8.2 that

> The Work may be suspended by the Owner if the Contractor[:]
>
> [1]     repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
> [2]     Fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and any subcontractors;
> [3]     Repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority;
> [4]     Otherwise is guilty of substantial breach of a provision of the Contract

8

Documents.

The chancellor evaluated Section 8.2 of the contract in light of the evidence presented by Rawaid when he found that Rawaid "failed to present any evidence that he had the right to suspend, terminate or not pay Respondent because Respondent repeatedly failed to supply properly skilled workers or proper materials, failed to make payments to subcontractors, failed to disregard applicable laws [sic], or was otherwise guilty of a substantial breach of the contract."

¶21.    Performance under a contract is substantially completed

> where the building or structure as a whole is not impaired, where it can be used for its intended purpose after erection, where the defects can be remedied without any great expenditure and without material damage to other parts of the structure and may without injustice be compensated for by deductions from the contract price.

*Garner v. Hickman*, 733 So. 2d 191, 196 (¶18) (Miss. 1999) (quoting *Bevis Const. Co. v. Kittrell*, 243 Miss. 549, 139 So. 2d 375, 379 (1962)).  Further, "'substantial performance' is a legal term of art meaning 'performance of all important particulars[.]'" *Watkins Dev. LLC v. Jackson Redev. Auth.*, 283 So. 3d 170, 175 (¶14) (Miss. 2019) (quoting *Hickman*, 733 So. 2d at 196 (¶18)).

¶22.    Looking at the evidence as presented by Rawaid, we find that the chancellor manifestly erred by granting an involuntary dismissal in favor of Beruk.[7]  Neither Rawaid nor

---

[7] Fasil later disputed, through his testimony, whether his work on the project was incomplete, substandard, or not up to code.  His testimony, however, came after the chancellor had determined the breach of contract issue and granted involuntary dismissal.  The testimony only concerned his cross-claim and alleged damages for non-payment.  This testimony will not be considered by this Court because it was not considered by the chancellor in granting the involuntary dismissal.

Murphy testified that the project as a whole was 80% complete. Instead, the testimony providing percentages was only from Murphy, and he stated that without consideration of the parking lot issues, the project was 80 to 85% complete. The 80% completion was conditioned upon the exclusion of the parking lot. However, the parking lot was always an important part of the project—the building was to be a gas station, which necessarily requires a parking lot for cars to drive up and pump fuel. The testimony from Murphy excluding the parking lot was reasonable because, as he testified, Murphy and Sons did not complete the work on the parking lot, and it cost approximately $155,000 for another subcontractor to do the work that Beruk was contractually obligated to do. More importantly, the parking lot was included in the scope of work for the original contract between Rawaid and Beruk. There was no basis for the court to exclude the parking lot in its determination of whether the project was substantially completed.

¶23. Additionally, there was no evidence presented at trial that 80% equates to substantial completion and excuses a breach of substandard and incomplete work. Instead, the evidence showed that Rawaid's building could not be used "for its intended purpose after erection[.]" *Hickman*, 733 So. 2d at 196 (¶18). Murphy testified that the store was not open and that the work was incomplete and substandard. His testimony evidenced that, in multiple instances, Fasil had failed to comply with "applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority" as required by Section 8.2 of the contract. Rawaid's testimony evidenced the many issues with Fasil's workmanship that prevented the store from opening, and at least one instance of Fasil failing to pay a subcontractor,

10

Hendricks Sheet Metal. Further, Rawaid and Murphy's testimony evidenced a "substantial breach of a provision of the Contract Documents" when detailing how Fasil deviated from the agreed contract and plans, e.g., installing incorrect air-conditioning units.

¶24. Further, the glass front doors were not installed flush, which allowed moisture to condense in the building. There was no parking lot, landscaping, sod, or dumpster enclosure. The entire back wall of the building needed modification—metal "R panels" had to be refastened, and a brick wall had to be constructed to meet City code requirements for hiding air-conditioning units. A piece of the structure that was installed on the roof blew over **in the wind**. One of the back doors would not open. Further, there were a multitude of fixtures inside the building that were not installed, e.g., hand dryers in the men's bathroom, kitchen vent hood, and the walk-in cooler. Lastly, the finishes on the building were incomplete— lights did not work, emergency exits were not finished, wall panels were peeling, drink fountains leaked, and flooring was not installed. The evidence satisfied Rawaid's burden of proof to survive involuntary dismissal by showing that Rawaid had the right to suspend work under Section 8.2 of the contract and that a breach had occurred. This Court finds the chancellor manifestly erred by granting an involuntary dismissal.

¶25. Beruk argues on appeal that the chancellor did not err by granting the dismissal and contends that the building was substantially completed as of February 5, 2020, when Beruk ceased work. Beruk contends that Rawaid breached the contract by failing to pay the change order and the ninth application for payment. This Court will not address these arguments on appeal since this case is being remanded for trial to continue and the chancellor can consider

11

all issues at the close of evidence. *See Ladner v. Stone County*, 938 So. 2d 270, 277 (¶31) (Miss. Ct. App. 2006) ("By raising a Rule 41(b) motion to dismiss, a defendant does not waive its right to put on its case-in-chief, should the motion be denied. Miss. R. Civ. P. 41(b).").

## CONCLUSION

¶26. The involuntary dismissal against Rawaid is reversed, and the case is remanded for the trial to continue.

¶27. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**