513 So.2d 946 (1987)
Thompson G. DANIEL
v.
The SNOWDOUN ASSOCIATION.
No. 57168.
Supreme Court of Mississippi.
October 7, 1987.
*947 Gary L. Geeslin, Columbus, for appellant.
Katherine S. Ferguson, Gholson, Hicks & Nichols, Columbus, for appellee.
Before HAWKINS, P.J., and ANDERSON and GRIFFIN, JJ.
ANDERSON, Justice, for the Court:
This is an appeal from a decree of the Chancery Court of Lowndes County granting The Snowdoun Association's petition for specific performance of an agreement between the Association and Thompson G. Daniel.
Snowdoun, an antebellum mansion in Columbus, was the ancestral home of Elizabeth Garth. In 1973, she married the appellant, Thompson G. Daniel, and the two lived at Snowdoun until her death on December 17, 1980. Elizabeth died testate *948 with a holographic will with two codicils, leaving Daniel $35,000 in cash and two tracts of real estate in Oktibbeha County. One of the codicils provided for the creation of The Snowdoun Association, a nonprofit corporation which was to receive title to the house Snowdoun with the understanding that it would be open to the public as a museum. $30,000 was set aside for the home's maintenance, and one of the codicils gave Daniel the right to live at Snowdoun as long as he desired. The residue of Elizabeth's estate  a very substantial one  was to be divided equally between the foundation for Mississippi University for Women and St. Paul's Episcopal Church.
Thompson Daniel was dissatisfied with the provision for him under the will. He filed an action in the chancery court seeking to have the bequest to MUW and St. Paul's declared void as contrary to the mortmain statutes. In the alternative, he sought to renounce the will and take his legal share of the estate in lieu of the bequest. The Snowdoun Association was not named as a party in this contest; the degree to which it took part in settlement negotiations is in dispute. Eventually, however, a settlement was reached in which Snowdoun was given the original $30,000 bequest plus 12% of the residuary estate, a total of about $100,000. MUW and St. Paul's received about $135,000 each and the rest went to Daniel. The settlement agreement was executed on October 2, 1981. On October 5, 1981, Daniel executed the "memorandum of understanding" which is the subject of this litigation. It reads:
Memorandum of Understanding
For good and valuable consideration, the undersigned, Thompson G. Daniel, does hereby covenant and agree that on or before November 1, 1981, but in no event later than three (3) days following distribution of the residuary estate of Elizabeth Garth Daniel, deceased, he will cause to be deposited in an Irrevocable Inter Vivos Trust at the Merchants and Farmers Bank of Columbus, Mississippi, the sum of $100,000. Said Merchants and Farmers Bank shall act as Trustee of said trust with the income to be distributed to the said Thompson G. Daniel during his lifetime and the principal and undistributed income to be paid to The Snowdoun Association, a Mississippi not for profit corporation, upon the death of the said Thompson G. Daniel.
The Trustee, named above, shall make all investment decisions; however, said investment decisions shall require the approval of Thompson G. Daniel.
"This Agreement is for the benefit of The Snowdoun Association and, in the event said Irrevocable Inter Vivos Trust is not entered into on or before, the date set forth hereinabove, said Snowdoun Association may seek to enforce this Agreement in any court of law or equity by way of specific performance or otherwise.
In witness whereof the undersigned has executed this Agreement on this the 5th day of October, 1981, and this Agreement shall be binding upon the heirs and assigns of the said Thompson G. Daniel.
/s/ Thompson G. Daniel
Witness /s/ (illegible)
Daniel failed to establish the trust fund, and Snowdoun brought the present action demanding specific performance of the agreement and further alleging that Daniel had converted certain items of personal property associated with the house to his own use. Daniel answered that the agreement was void for lack of consideration, and denied converting the articles. The cause was heard before the chancellor, who found that the memorandum was supported by consideration and was therefore binding upon Daniel. He ordered it specifically performed. He also concluded that only one of the articles of personal property in question, to-wit a Battenburg tablecloth, had been converted, and that Daniel must account for it.
As all lawyers know, a promise not supported by consideration will not ordinarily be enforced by the courts. At the heart of this appeal is the question whether the "memorandum of understanding" was supported *949 by consideration. The chancellor found two bases for consideration; we will consider both, as well as a third theory discussed by the parties in the briefs.

I. THE INTENT OF THE TESTATRIX
In his bench opinion, the chancellor stated:
The Snowdoun Foundation is a creature of the testatrix. Its continued existence, well-being and virtual survivorability in the opinion of the court is an extension of the expressed intent and wishes of the testatrix... . [The association offered Daniel] the fulfillment of the lifelong expression of the testatrix in the creation and establishment of the home Snowdoun as a memorial. The trustees of Snowdoun have sought nothing for themselves, only the fulfillment of the expressed desire of the testatrix. In that respect, consideration flows both to the plaintiff and the defendant in carrying out the wishes of the testatrix.
Daniel argues that mere sentiments, such as affection, love, and the like, cannot in themselves furnish adequate consideration for an enforceable contract. He is, of course, correct. A.L. Corbin, Contracts § 131 (1963). There is, however, a more basic reason for holding that the chancellor erred. If an agreement is to be held supported by consideration, that consideration must come from the parties to the agreement. 17 C.J.S. Contracts § 71. Here, the chancellor argued that consideration flowed from the desires of the testatrix Elizabeth. A famous English case on consideration is instructive here. In Thomas v. Thomas, 2 Q.B. 851, 114 Eng.Rep. 330, (1842), the defendant was the executor of a will. The testator was known to have wanted his widow to receive a certain house, and the defendant had promised to give her that house. He failed to do so, the widow sued and the defense of lack of consideration was raised. Justice Patteson remarked:
It would be ... too large a construction if we were to adopt the view urged by the defendant; it would be confounding consideration with motive. Motive is not the same thing as consideration. Consideration means something which is of some value in the eye of the law, moving from the plaintiff; it may be some benefit to the defendant or some detriment to the plaintiff; but in all events it must be moving from the plaintiff. Now that which is suggested as the consideration here, a pious respect for the wishes of the testator does not in any way move from the plaintiff; it moves from the testator; therefore, legally speaking, it forms no part of the consideration.
2 Q.B. at 859, 114 Eng.Rep. at 333-34.
See also, Corbin, supra, § 118. Therefore, the chancellor was clearly wrong in deriving consideration for this agreement from the intent of the testatrix.

II. FOREBEARANCE TO SUE.
Two officers of The Snowdoun Association, Carleton Billups and Robert Hardy, were related to Elizabeth Garth Daniel through a common ancestor. There was evidence that they threatened a civil action over Elizabeth's will. The briefs discuss the question of whether their forbearance to bring such an action could make the memorandum a binding contract.
Forebearance to sue or institute some other legal proceeding can constitute consideration. However, in Mississippi as in most other states, this rule is qualified by the corollary that the action foregone must be a bona fide one. If a claim or defense is obviously frivolous or groundless, refraining to assert it cannot furnish consideration for an agreement. 17 C.J.S. Contracts § 103 A; In Re Sadler's Estate, 232 Miss. 349, 360, 98 So.2d 863, 867 (1957); Cf. McGehee v. McGehee, 227 Miss. 170, 182, 85 So.2d 799, 804 (1956).
In the present case, Daniel argues that the contemplated challenge to Elizabeth's will would have been based on the mortmain statute. MCA § 91-5-31 (1972). The statute says, in part:
No person leaving a spouse or child or descendant of a child shall, by will bequeath or devise more than one-third of his estate [to charity] to the exclusion of such spouse or child or descendant of *950 such child. In all cases the will containing such bequest or devise must be executed at least ninety days before the death of the testator, or such bequest or devise shall be void.
Daniel correctly points out that under our rule, the second sentence "in all cases ..." applies only to the will of someone leaving a wife, child, or descendants of children. Bell v. Mississippi Orphans' Home, 192 Miss. 205, 218-19, 5 So.2d 214, 219 (1941). The effect of this is that the mortmain statute can be invoked only by a spouse, child or descendant of a child. Carleton Billups and Robert Hardy are related to Elizabeth Daniel only collaterally. Therefore, any action they could have filed under the mortmain statute would have been groundless.
The Association effectively admits as much in its brief by asserting that the challenge would not have been based on the mortmain statute but on the intestacy statute. However, this leaves Billups and Hardy in no better shape. Our statute of descent and distribution for real property, [MCA § 91-1-3 (1972)] clearly states that such property descends in equal shares to the surviving spouse and the children per capita. Other relatives may take only if there are no such heirs. Because Elizabeth Daniel left a surviving spouse, it is obvious that neither Carleton Billups nor Robert Hardy could take any part of her state under the intestacy statute.
Thus, Billups and Hardy lacked even a colorable claim under the only two theories which could conceivably apply to any action they might file. Their forebearance to sue cannot furnish consideration for the memorandum.

III. THE SETTLEMENT NEGOTIATIONS
Lack of consideration is an affirmative defense. The party advancing it must plead it in his answer, as Daniel did here. Where the instrument in controversy contains a statement or recital of consideration, it creates a rebuttable presumption that consideration actually existed. 17 C.J.S. Contracts § 73. See also, Dabbs v. International Minerals and Chemical Corp., 339 F. Supp. 654, 664 (N.D.Miss. 1972). The general rule is that this presumption is established even by such expressions as "for value", "for good and sufficient consideration", "for value received" or, as in the present case, "for valuable consideration." Frank v. Irgins, 27 Minn. 43, 6 N.W. 380, 380 (1880); Estate of Weinsaft, 647 S.W.2d 179, 183 (Mo. App. 1983); Gover v. Empire Bank, 574 S.W.2d 464, 468-64 (Mo. App. 1978). This presumption, however, does not disable the defendant from putting on proof designed to show that the consideration was not actually paid or bargained for. Restatement 2d of Contracts § 71, Comment (b) (1979). See also, e.g., Upper Avenue National Bank of Chicago v. First Arlington National Bank of Arlington Heights, 81 Ill. App.3d 208, 36 Ill.Dec. 525, 527, 400 N.E.2d 1105, 1107 (1980); Presbyterian Church of Albany v. Cooper, 112 N.Y. 517, 20 N.E. 352, 353 (1889). The rebuttal must be made by a clear preponderance of the evidence. Gershon v. Ashkanazie, 239 Mo. App. 1012, 199 S.W.2d 38, 40 (1947). The resolution of any conflict in the testimony is for the trier of fact.
In the present case, a great deal of Daniel's brief is devoted to showing that The Snowdoun Association was "aligned" with Daniel during the negotiations leading to the settlement of Daniel's will case. The point seems to be that, Snowdoun's interests being what they were, Snowdoun naturally would have taken whatever actions it did take regardless of whether Daniel had offered them anything. Thus Daniel's offer of a gift could not have been made to Snowdoun in order to secure Snowdoun's intervention because Snowdoun would have intervened anyway.
It is generally held that for consideration to be valid, it must have been bargained for  some sort of reciprocal inducement must be involved.
But the modern view is that where consideration is bargained for, it need not, in itself induce the promise. Restatement, (2d) of Contracts § 81 (1979). As Corbin says:

*951 [It is not necessary] that consideration should be the sole inducement or motivating cause of the promise or even that it shall be the prevailing or chief inducement. It must be enough of an inducement that it is in fact bargained for. Corbin, supra, § 118.
In support of his position Daniel points to numerous oral admissions at trial that Snowdoun had little to offer Daniel and to various writings indicating Snowdoun's relatively disadvantaged position, especially the letter from Snowdoun's lawyer describing Snowdoun as "a supplicant seeking a handout." Snowdoun on the other hand, points to Billups' testimony that "Snowdoun could do a lot for Mr. Daniel," and to such items as a letter to Billups from Daniel's attorney stating that the "responsibility of concluding settlement with these opposing litigants obviously devolves upon the Snowdoun board," and another letter to Snowdoun's attorney exhorting Snowdoun to "begin to assume the responsibility of supporting Thompson Daniel" in his struggle against the church and the college.
Daniel says he merely offered encouragement and appreciation as a result of Snowdoun's mediation in his behalf; Snowdoun asserts that it intervened as a result of Daniel's encouragement. The record will bear either interpretation. That being the case, deference to the chancellor's findings is in order. His opinion was that "for whatever leverage, to effect a settlement, the participation of Snowdoun was recognized by Daniel to be essential. Their alliance was sought and was given." On appeal, this Court will not overturn a chancellor's finding of fact unless he is manifestly wrong. McElhaney v. City of Horn Lake, 501 So.2d 401 (Miss. 1987); Deveraux v. Devereaux, 493 So.2d 1310 (Miss. 1986); Voss v. Stewart, 420 So.2d 761 (Miss. 1982). We can reach no such conclusion on this record.
There remains the question of the Battenburg tablecloth. Here, the evidence showed nothing more than that the tablecloth was on the premises at the time Daniel left and shortly thereafter and it subsequently disappeared. There is not one scintilla of evidence that Daniel removed it. There being no evidence to support the chancellor's ruling, he was clearly wrong, and must be reversed.
For the foregoing reasons, the chancellor's decree is affirmed as to specific performance of the agreement, but reversed as to the order to account for the tablecloth.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN and GRIFFIN, JJ., concur.
PRATHER, J., not participating.