909 So.2d 1267 (2005)
MARSHALL DURBIN FOOD CORPORATION, Appellant
v.
Bill W. BAKER, Appellee.
No. 2003-CA-02073-COA.
Court of Appeals of Mississippi.
February 15, 2005.
*1270 Camille Henick Evans, Ann Bowden-Hollis, Gulfport, Jeffrey A. Walker, Jackson, William K. Hancock, Birmingham, Ala., attorneys for appellant.
Cynthia Hewes Speetjens, T. Roe Frazer, Jackson, attorneys for appellee.
Before BRIDGES, P.J., MYERS and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Bill Baker, former president of Marshall Durbin Food Corporation, brought suit against his former employer to enforce an agreement which would provide him with five years of monthly compensation equal to his monthly salary while employed. The Chancery Court of Wayne County, Mississippi, held the contract to be valid and ordered Marshall Durbin Food Corporation to pay Mr. Baker in accordance with the terms of the contract, beginning September 10, 2001. Marshall Durbin Food Corporation appealed. We affirm in part and reverse and render in part.

SUMMARY OF FACTS AND DISPOSITION BELOW
¶ 2. Mr. Baker began working as a management trainee for Marshall Durbin Food Corporation ("the Company") in 1965 and ascended through the ranks until, in October of 1998, Mr. Baker was elected to the Company board of directors; he also held the position of vice president, live production.
¶ 3. The Company was in troubled times. Grain prices had gone through the ceiling, and poultry prices had dropped. The Company experienced a loss of approximately thirty million dollars. Disagreements between Marshall Durbin, Jr. ("Mr. Durbin"), who owned approximately 80% of the Company stock, and his two daughters, Elise and Melissa, who owned or controlled about 18% of the stock, caused a great deal of tension in the Company. The minutes of the October 1998 stockholders meeting reflect that Elise and Melissa Durbin were not re-elected to the board because of "disruptions due to the forcing of employees to take sides and matters ha[ving] been discussed in meetings with employees that should have been resolved in private between family members." Mr. Durbin announced that he would recommend that the new board not re-elect his daughters to their position as co-presidents of the company; in the directors meeting which followed, Elise and Melissa Durbin, were not elected as officers of the Company.
¶ 4. In the months which followed, several valuable employees, including Mr. Baker, expressed concern regarding the uncertainty of their future with the Company if *1271 anything ever happened to Mr. Durbin. The Company's sole witness, John Perri, described this period as "chaos" and testified that Mr. Baker "kind of was put in the breach to help save the company, because we were spiraling downward. [Baker] spoke to me one time and he said ... we've got to get everybody back working together and save this company ... I know there is a risk that, God forbid, that something happens ... the girls come back with the company, the people could lose their job; and I'm going to go to [Mr. Durbin] and see if these key people ... can get a year's retirement so in the event they come in and you lose your job, at least you've got a year to look for another job...."
¶ 5. In response to this concern, Mr. Durbin offered an "agreement of termination and/or early retirement" to three high level Company employees, one of whom was Mr. Baker. On November 15, 1999, Mr. Baker and Mr. Durbin executed a contract which provided a number of circumstances that would trigger an "effective date." Once triggered, Mr. Baker would receive a specified amount of compensation for five years. The agreement provides in part:

EMPLOYMENT: The corporation and Employee agree that the employment of Employee will be employee-at-will. This contract is not intended to create contractual employment between the Corporation and Employee.

EFFECTIVE DATE: The Employee shall be entitled to the following termination and/or early retirement compensation upon the effective date of any of the following:
A. the establishment of an Effective Date by the Board of Directors or President of the Corporation; or
B. upon any "change in control", where more than 51% of the stock is not owned by the current stockholder owning more than 51% of the stock, and the current majority stockholder is not active in management of the Company; or
C. upon change in executive management of the Corporation, including Board of Directors, President or Chief Executive Officer, which creates a substantial change in duties of the Employee, requires the Employee to move from their present place of Employment, creates hostile working conditions, or
D. upon the death or incapacity of Marshall Durbin, Jr.

TERMINATION AND/OR EARLY RETIREMENT COMPENSATION: During the term of this Agreement, upon the occurrence of any of the events listed in Paragraph 3, the Employee shall have and receive, subject to withholding and other applicable employment taxes, a monthly salary, payable on the 10th day of each month, mailed to the Employee's address on record. The salary shall be the base pay of the Employee on the Effective Date of the occurrence listed in paragraph 3. The compensation shall extend for a term of five years from the Effective Date, and shall commence upon the occurrence of any of the events in Paragraph 3.
¶ 6. The board of directors ratified the agreement on November 15, 1999, and the existence of the "[d]eferred compensation" agreement was disclosed in the notes to the consolidated financial statements of the Company and its subsidiaries issued November 16, 2000.
¶ 7. In 2001, Mr. Durbin was diagnosed with malignant lymphoma in the central nervous system and received radiation therapy treatments to the brain. On July *1272 9, 2001, Mr. Baker assumed the responsibilities of Company president during Mr. Durbin's absence for medical purposes. On August 14, 2001, on emergency petition of Elise Durbin, the Probate Court of Jefferson County, Alabama, declared Mr. Durbin incapacitated. The court appointed Mr. Durbin's daughters as temporary co-guardians and Mr. Bainbridge, one of the Company's attorneys, as temporary conservator of Mr. Durbin's estate. The petition estimated the value of Mr. Durbin's shares in the Company to be $40,000,000.
¶ 8. On August 30, 2001, Mr. Baker wrote Mr. Bainbridge notifying him that the agreement had been triggered by Mr. Durbin's incapacity. The letter explained that Mr. Baker would perform his duties as a consultant and no longer as an employee. On September 17, 2001, Mr. Durbin died. Within a day or two, Company employees went to Mr. Baker's residence and picked up his Company car, explaining to Mr. Baker that he had resigned. On September 20, 2001, Mr. Baker filed a complaint for specific performance of the contract in the Chancery Court of Wayne County, Mississippi.
¶ 9. By letter dated October 19, 2001, Mr. Baker was informed by the Company's counsel that a new board of directors had been elected on October 1, 2001, and had "immediately" voted to terminate Mr. Baker's employment with the Company in all capacities. The letter referred to Mr. Baker's August 31st letter[1] as a "letter of resignation" and stated that the termination/early retirement agreement referenced therein was "not valid and, accordingly, the Directors have voted, on behalf of the Company to repudiate such agreement." No basis for the claim of invalidity was provided. In answer to the complaint, however, the Company asserted failure of consideration as an affirmative defense.
¶ 10. Trial was held on February 27, 2003; each side presented only one witness. Mr. Baker testified in support of his complaint, and John Perri, former vice president and controller, testified on behalf of the Company. Following conclusion of the testimony, the Honorable Frank McKenzie rendered a bench opinion upholding the validity of the contract and finding the Company in breach. From the testimony of Mr. Perri that the Company was "spiraling down," the court concluded that "it was very important to Mr. Durbin that he retain his top management personnel in that time of uncertainty in the industry." The court found it to be in the best interest of the Company to offer top management incentive to prevent their looking for or accepting other employment opportunities in the industry and found it to be a "good decision" to retain these long-term employees, particularly in view of the conduct of Mr. Durbin's daughters. The court continued that "[i]n reliance upon that contract, Mr. Baker did not seek other employment opportunities, continued to work for [the Company] in his capacity of chief operating officer. Since the company is still in existence today, I assume that they turned things around during that period of time and got the company on a profitable ... footing."
¶ 11. In response to questioning by the Company's trial counsel as to the consideration for the contract, the court responded, "The contract itself was the consideration given by Marshall Durbin. Marshall Durbin received the benefit, and I'm saying the company received the benefit of retaining *1273 the services of Mr. Baker, who at the time was extremely concerned about his future with the company. And, as he testified, had been contacted by others seeking to hire him."
¶ 12. The court determined that the effective date of the contract was triggered by the undisputed evidence that Mr. Durbin was incapacitated on August 14, 2001,[2] and that while Mr. Baker offered his services to the Company thereafter on a consultancy basis, payment for which would have reduced his entitlement under the contract, the Company terminated Mr. Baker's relationship in any capacity. The court ruled that the Company's payment obligation to Mr. Baker commenced on September 10, 2001 and would continue for five years, thereby entitling Mr. Baker to recover a total of $964,517.95, barring early termination upon the death of Mr. Baker and his wife. The Company filed a timely notice of appeal.

STANDARD OF REVIEW
¶ 13. This Court employs a limited standard of review when reviewing a chancellor's decision. Shirley v. Christian Episcopal Methodist Church, 748 So.2d 672, 674 (¶ 9) (Miss.1999). We will not interfere with or disturb a chancellor's findings of fact unless those findings are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. G.B. "Boots" Smith Corp. v. Cobb, 860 So.2d 774, 776 (¶ 6) (Miss.2003). "Even if this Court disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong." Richardson v. Riley, 355 So.2d 667, 668 (Miss.1978). Questions of law are reviewed de novo. Zeman v. Stanford, 789 So.2d 798, 802 (¶ 12) (Miss.2001).

ISSUES AND ANALYSIS

I. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THE EXISTENCE OF BARGAINED FOR CONSIDERATION
¶ 14. We are presented with the issue of whether a valid contract was formed between the Company and Mr. Baker. The Company claims the contract is invalid for lack of consideration. Consideration is, of course, one of the six elements required for the existence of a valid contract. See Rotenberry v. Hooker, 864 So.2d 266, 270 (¶ 13) (Miss.2003). The Mississippi Supreme Court has defined "[c]onsideration for a promise [a]s `(a) an act other than a promise, or (b) a forbearance, or © the creation, modification or destruction of a legal relation, or (d) a return promise, bargained for and given in exchange for the promise.'" City of Starkville v. 4-County Electric Power Assoc., 819 So.2d 1216, 1220 (¶ 10) (Miss.2002) (quoting Lowndes Coop. Ass'n v. Lipsey, 240 Miss. 71, 126 So.2d 276, 277 (1961) (quoting Restatement of Contracts § 75 (1932))).

A. What is the effect of the contract's recital of consideration?
¶ 15. Failure of consideration is an affirmative defense. Daniel v. Snowdoun Ass'n, 513 So.2d 946, 950 (Miss.1987); Miss. R. Civ. Pro. 8(c). "Where the instrument in controversy contains a statement or recital of consideration, it creates a *1274 rebuttable presumption that consideration actually existed." Daniel, 513 So.2d at 950; Estate of Smith v. Samuels, 822 So.2d 366, 370 (¶ 13) (Miss.Ct.App.2002). While the presumption does not preclude the defendant from putting on proof designed to show that the consideration was not actually paid, his "rebuttal must be made by a clear preponderance of the evidence." The trier of fact resolves any conflicting evidence. Daniel, 513 So.2d at 950.
¶ 16. In the instant case, the contract in controversy expressly recites "consideration of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of all of which is acknowledged...." At trial, neither party offered any evidence to confirm or rebut the presumption of consideration which arises from this recitation. Mr. Perri[3] did testify on behalf of the Company that he was not "aware" of any value received by Marshall Durbin in return for the agreement. Perri did not testify, however, that had the recited consideration been paid, it would necessarily have come to his attention. In fact, he admitted that he was not even aware of the existence of the contract until he received the draft financial report between mid-December and mid-January. We find Perri's testimony insufficient to rebut the presumption of consideration by a "clear preponderance of the evidence." While the unrebutted presumption is sufficient to affirm the decision of the chancellor as to the existence of consideration,[4] we will, nevertheless, address the arguments raised by the Company.

B. Were the promises made by Mr. Baker and the Company mutually illusory?
¶ 17. The Company argues that the contract was not supported by consideration because the promises by both Mr. Baker and the Company were illusory. First, the Company alleges that Baker's promise to refrain from seeking other employment and forbearance from leaving the Company renders the promise illusory and thus cannot provide consideration. Second, the Company argues that its absolute right to terminate Baker's employment with the Company at any time renders the promise illusory because it is conditioned upon something completely within the Company's control. Also, the Company argues that the promises of both Mr. Baker and the Company were illusory because their relationship was unquestionably at-will. Although we find the Company correct in its contention that no valid promise was given by Mr. Baker in exchange for the Company's promise of payment, we reject the contention that the Company's promise was also illusory. Accordingly, Mr. Baker could, and did, supply consideration for the Company's promise by "an act other than a promise." See City of Starkville, 819 So.2d at 1220 (¶ 10); Lowndes Coop. Ass'n, 126 So.2d at 277.
*1275 ¶ 18. The Mississippi Supreme Court has relied on Professor Corbin's analysis of illusory promises as consideration, which states:
By the phrase "illusory promise" is meant words in promissory form that promise nothing; they do not purport to put any limitation on the freedom of the alleged promisor, but leave his future action subject to his own future will, just as it would have been had he said no words at all.... A prediction of future willingness is not an expression of present willingness and is not a promise. To see a promise in it is to be under an illusion. We reach the same result if B's reply to A is, "I promise to do as you ask if I please to do so when the time arrives." In form this is a conditional promise, but the condition is the pleasure or future will of the promisor himself. The words used do not purport to effect any limitation upon the promisor's future freedom of choice. They do not lead the promisee to have an expectation of performance because of a present expression of will. He may hope that a future willingness will exist; but he has no more reasonable basis for such a hope than if B had merely made a prediction or had said nothing at all. As a promise, B's words are mere illusion. Such an illusory promise is neither enforceable against the one making it, nor is it operative as a consideration for a return promise.
Krebs ex rel. Krebs v. Strange, 419 So.2d 178, 182-83 (Miss.1982) (quoting 1 Corbin, Contracts, § 145 (1 vol. ed.1952)). Applying this analysis, we determine that no valid promise was given by Mr. Baker in exchange for the Company's promise of payment, however, we reject the contention that the Company's promise was illusory.
¶ 19. The contract expressly disavows any intent "to create contractual employment" between the Company and Mr. Baker; in fact, the parties agreed that Mr. Baker would be an "employee-at-will." By executing the contract, Mr. Baker did not promise to remain in the Company's employ; at trial, Mr. Baker admitted, "I could have quit at any time." The trial court recognized this fact: "Well, as I review the contract, I don't think he was obligated to continue to be an employee of Marshall Durbin.... Probably not. But, as long as he did continue to be an employee of Marshall Durbin, and any of those triggering events occurred while he was an employee of Marshall Durbin, then the contract went into effect." Accordingly, the trial court based its finding of consideration not upon any promise by Mr. Baker to continue to work for the Company but upon Mr. Baker's act of continuing to work for the Company and the Company's corresponding receipt of benefit from Mr. Baker's services. The United States Court of Appeals for the Fifth Circuit has recognized that "the presence of an illusory promise does not destroy the possibility of a contract. Instead, it may create a unilateral contract, and `the promisor who made the illusory promise can accept [it] by performance.'" Olander v. Compass Bank, 363 F.3d 560, 565 (5th Cir.2004) (quoting Light v. Centel Cellular Co., 883 S.W.2d 642, 645 n. 6 (Tex.1994)).
¶ 20. The Company did not promise to continue to employ Mr. Baker for any definite period of time; however, it did promise that if Mr. Baker continued his employment until the happening of a triggering event, the Company would compensate him as set forth in the contract. The Company's promise was contingent; it was not illusory. Mr. Baker apparently trusted Mr. Durbin and was willing to continue his employment at the will of Mr. Durbin. Had Mr. Durbin terminated Mr. Baker's *1276 employment prior to the occurrence of one of the triggering events, Mr. Baker would have had no recourse. The contract was not designed to, and did not, provide for that occurrence. This case comes to us, however, after the contingency (Mr. Baker's employment upon the happening of a triggering event) has been fulfilled; and the Company's promise to pay under these circumstances is not illusory.
¶ 21. Mr. Baker's consideration for the Company's promise was not by a return promise, but by "an act other than a promise." See Lowndes Coop. Ass'n, 126 So.2d at 277. As with the instant case, Lowndes Coop. Ass'n considered the question of the legal sufficiency of consideration to support a retirement agreement of an employee. The association decided that the employee, Lipsey, should be relieved of his duties and paid certain retirement benefits for thirty months "provided he cooperates with the board of directors and the new management." Although reluctant to retire, Lipsey accepted the offer and retired voluntarily, refrained from raising any objections among his friends who were members of the association, and assisted the new manager for over two months. The association thereafter terminated the retirement payments, claiming the promises of payment to be mere gifts to the employee and not supported by consideration. The Mississippi Supreme Court found there to be "several legally sufficient considerations to support [the association's] promise to pay the retirement benefits, and to make it a binding obligation: A promise to cooperate, the act of retiring without objection, and the acts of advising and assisting the new manager." Lowndes Coop. Ass'n, 126 So.2d at 276-78. In the instant case, the Company focuses only on the alleged return promise of Mr. Baker and ignores the fact that other consideration, such as Mr. Baker's actual performance, is equally sufficient consideration.

C. Was the contract based on past consideration?
¶ 22. The Company alleges that the parties both intended for Baker's past service to the Company to serve as consideration for future payments and that past consideration generally cannot form the basis of a valid contract. The Company points to the language of the consent action of the Company board of directors approving the agreement that Mr. Baker "had been employed by the Corporation for a number of years," that "the Company had experienced difficult financial times during the past five years," and that Baker had "made great personal sacrifices to help the President change the operating results of the Corporation." In most situations, past consideration may not serve as consideration. However, "a contract founded partly on a past consideration and partly on an executory consideration is enforceable, although in a sense no resort to the past consideration need be had as the new or executory consideration is conceptually adequate to support enforceability of the contract." Jim Murphy & Assoc., Inc. v. LeBleu, 511 So.2d 886, 891 (Miss.1987). In this case, Mr. Baker's past performance and service to the Company made him a valuable employee whose services the Company desired to retain during the time of "chaos." Mr. Perri, the Company's sole witness, described Mr. Baker as a "key person" who was "put in the breach to help save the company, because we were spiraling downward." The contract did not, however, promise to pay Mr. Baker for this past performance but for his future performance and service to the company. Mr. Baker would only receive payment under the contract if he was an employee of the Company on some date in the future when a triggering event occurred. The Company's claim of "past consideration" is without merit.

*1277 D. Is the contract unenforceable if based on Baker's forbearance from seeking other employment?
¶ 23. The Company contends that Baker's forbearance from seeking other employment was not a legal detriment and cannot constitute consideration. Legal detriment, as opposed to detriment in fact, is present where the promisee gives up something he was privileged to retain prior to the contract. See 1 Williston, Contracts §§ 102A, 382 (3d ed.1957); Lowndes Coop. Ass'n, 126 So.2d at 278. The Company argues that Mr. Baker had no legal duty to refrain from looking for other employment, and, therefore, did not suffer legal, as opposed to factual, detriment. Further, the Company contends that forbearance from seeking other employment is not legal detriment in the context of at-will employment contracts. Mr. Baker argues that his detriment consisted of his refraining from seeking other employment and his commitment to the Company at a time when the Company was in a volatile environment. We need not decide this issue. The trial court found not only detriment to Mr. Baker in forbearing from seeking or accepting other employment, but also benefit to the Company in retaining Mr. Baker's services.[5]
¶ 24. Again, Lowndes Coop. Ass'n is instructive: "A benefit to the promisor or detriment to the promisee is sufficient consideration for a contract. This may consist either in some interest, right, profit or benefit accruing to the one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." 126 So.2d at 278 (emphasis added); see also Iuka Guar. Bank v. Beard, 658 So.2d 1367, 1372 (Miss.1995) ("[c]onsideration is sufficient if there is any benefit to the promisor or any loss, detriment, or inconvenience to the promisee").
¶ 25. After reviewing the record, we find as the trial court did, that the Company benefitted by retaining the services of Mr. Baker. Marshall Durbin intended to maintain a secure work environment for his high level management team during a turbulent time. In his bench opinion, the chancellor found Mr. Durbin's business decision to execute such a contract was wise given the fact that the Company was in trouble and Mr. Durbin's daughters were circulating correspondence that was causing concern among top level employees with respect to job security. Mr. Perri testified that Mr. Baker was "put in the breach to help save the company, because we were spiraling downward." Approximately two years later, Elise Durbin, in petitioning for conservatorship of her father, estimated his stock in the Company to be worth $40,000,000. We find that the trial court's assumption "that they turned things around during that period of time and got the company on a profitable ... footing" to be supported by the record. The Company has never challenged, and in fact completely ignores, the finding that the Company enjoyed the benefits of retaining a valued employee. The trial court correctly determined there to be consideration for the contract, and we affirm.

II. WHETHER THE TRIAL COURT ERRED IN DETERMINING AUGUST 14, 2001 TO BE THE EFFECTIVE DATE OF THE AGREEMENT

A. Did the trial court err in admitting hearsay?
¶ 26. The Company alleges that the trial court erred in admitting and relying *1278 on a certified copy of a portion of the court file from the Probate Court of Jefferson County, Alabama, in determining the effective date of the agreement. The document in question is on letterhead from the Birmingham Hematology and Oncology Associates, L.L.C., and was attached as an exhibit to Elise Durbin's affidavit in support of her emergency petition for conservatorship of her father. The letter recites the physicians' opinion that "[a]t this time Mr. Durbin is clearly lacking sufficient understanding or capacity to make responsible decisions." The affidavit of Miss Durbin states that the letter was delivered to her by the physicians who examined her father on August 13, 2001.
¶ 27. The Company argues that this letter was inadmissable hearsay and should not have been relied upon by the trial court in determining Mr. Durbin to be incapacitated on August 14, 2001. Further, the Company contends that its general objection to any hearsay evidence in the probate file was sufficient and should have been sustained. In the end, the Company argues that the trial court relied on hearsay to find the occurrence of the "effective date," making the error worthy of reversal.
¶ 28. We disagree with the Company's contentions. The trial court correctly admitted the letter where the Company failed to object to the admission of the evidence at trial. The Company's trial counsel made only a general objection that some of the documents in the file from the Probate Court of Jefferson County, Alabama might contain hearsay; counsel failed to identify any particular document as containing hearsay. When the specific letter in question was brought to the court's attention, and later, when the court read the letter in its entirety into the record, the Company's trial counsel failed to raise any objection. Failure to raise a contemporaneous objection constitutes a waiver of the issue on appeal. See Gatlin v. State, 724 So.2d 359, 369 (¶ 43) (Miss.1998); Kroger Co. v. Scott, 809 So.2d 679, 686 (¶ 18) (Miss.Ct.App.2001). Further, when the court issued its bench opinion that "the evidence is without dispute" that Mr. Durbin was incapacitated on August 14, 2001, trial counsel did not voice any objection at the conclusion of the opinion or on motion to reconsider. The Company's belated challenge to the evidence contained in the Alabama probate file is procedurally barred.

B. Whether the Trial Court Erred Factually in Finding Two Effective Dates for the Agreement?
¶ 29. The Company contends that only the event earliest in time could trigger the payment obligation under the agreement. Thus, the effective date of the contract should have been July 9, 2001, the date Mr. Baker was named president of the Company, and the Company's obligation to pay Baker should cease five years later, on July 10, 2006. The contract specifically states that "the Employee may continue to be employed subsequent to any of the [triggering] events. Such employment will be credited against the termination and early retirement compensation of this contract...." Thus, the Company asserts that the trial court's judgment, finding the Company's monthly payment obligation to begin on September 10, 2001, erroneously extended the Company's payment under the contract for two months.
¶ 30. Upon careful review of the record, we find that the Company did not raise this issue with the lower court. Thus, it is procedurally barred from raising the issue here for the first time. Sumrall Church of the Lord Jesus Christ v. Johnson, 757 So.2d 311, 316 (¶ 12) (Miss.Ct.App.2000). Under Mississippi law, an *1279 appellant cannot prevent the trial court from having an opportunity to address an alleged error by raising a new issue on appeal. Crowe v. Smith, 603 So.2d 301, 305 (Miss.1992). The purpose for requiring the objections at the trial level is to "avoid costly new trials and to allow the offering party an opportunity to obviate the objection." Sumrall Church of the Lord Jesus Christ, 757 So.2d at 316. However, notwithstanding the procedural bar, we feel compelled, in light of the pleadings, evidence adduced at trial, and the findings of the trial court to notice the September 10, 2001 effective date as plain error. We agree with the Company's assertion that the lower court's disregard as to the date when Baker assumed the position of president of the Company, after identifying it as an additional triggering event, constitutes clear and substantial error. The language of contract specifically provides that after the occurrence of any of the triggering events, Baker's continued employment would be credited against the compensation provided by the contract and would "not extend the compensation term of five years from the Effective Date."
¶ 31. Accordingly, we reverse as to the effective date of the contract and render that the Company's payment obligation commenced on July 10, 2001 and is to continue thereafter in accordance to the terms and provisions of the Agreement of Termination and/or Early Retirement.

III. IS THE COMPANY COLLATERALLY ESTOPPED FROM SEEKING JUDICIAL REVIEW?
¶ 32. Mr. Baker raises an additional issue on appeal. He claims that the Company is collaterally estopped from seeking judicial relief with this Court and references a judgment from a court in Alabama between Defendant Agri-Business Supply Co., a subsidiary of the Company, and Plaintiff Morgan Edwards, a former Agri-Business Supply Co. employee. The Company moves to strike this issue as being improperly raised for the first time on appeal. We agree with the Company that Mr. Baker did not raise the issue of collateral estoppel at the trial court level, and thus he cannot raise it before this Court. See Mississippi Pub. Serv. Comm'n v. Merch. Truck Line, Inc., 598 So.2d 778, 780 (Miss.1992); Bush Const. Co. v. Walters, 254 Miss. 266, 179 So.2d 188, 190 (1965). Upon review of the record, we find that Mr. Baker's attempted offensive use of collateral estoppel is not properly before this Court. By separate order, we grant the Company's motion to strike this issue.

CONCLUSION
¶ 33. We find that the chancery court properly held the agreement between Mr. Baker and the Company to be enforceable. We affirm the lower court's decision as to the validity of the contract and reverse and render as to the effective date.
¶ 34. THE JUDGMENT OF THE CHANCERY COURT OF WAYNE COUNTY IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR. LEE, P.J., NOT PARTICIPATING.
NOTES
[1] Testimony confirmed that this was an attempted reference to Mr. Baker's August 30, 2001, correspondence with Mr. Bainbridge.
[2] The court also found as a "triggering event," Mr. Baker's assumption of additional duties and responsibilities due to Mr. Durbin's illness. The court determined that as a result of Mr. Baker's being named president of the Company, his responsibilities substantially increased.
[3] Although Mr. Perri identified himself to be the "chief financial officer" of the Company on direct examination, he admitted on cross examination that he did not, in fact, hold that title; he contended, however, that he "performed the duties." The only minutes in the record, those of the October 1998 board of directors meeting, do not identify any person as "chief financial officer." Mr. Durbin is listed as chairman of the board, CEO, president and treasurer.
[4] As an appellate court, we are not limited to the lower court's reasoning as to the result it reached. We have the ability to affirm the chancellor's decision even though we may have different rationale for reaching the same result. Puckett v. Stuckey, 633 So.2d 978, 980 (Miss.1993); Stewart v. Walls, 534 So.2d 1033, 1035 (Miss.1988); Towner v. State, 837 So.2d 221, 225 (¶ 9) (Miss.Ct.App.2003).
[5] The Company inherently recognizes this alternative holding, as it argues that the agreement is unenforceable "if" based on forbearance.